PENNSYLVANIA RAILROAD COMPANY, LESSEE OF THE NORTHERN CENTRAL RAILWAY COMPANY, *v.* TOWERS ET AL., CONSTITUTING THE PUBLIC SERVICE COMMISSION OF MARYLAND.

ERROR TO THE COURT OF APPEALS OF THE STATE OF MARYLAND.

No. 31.   Argued April 25, 26, 1917.—Decided October 15, 1917.

Whether the statutes of Maryland intend to authorize the Public Service Commission to revise intrastate commutation rates when such rates have already been established by voluntary action of the railroad company, is a question of state law concerning which the conclusion of the Court of Appeals of Maryland binds this court upon a writ of error to review its judgment.

State regulation, through a public service commission, requiring a carrier to maintain commutation service between points within the State and fixing rates therefor, which are less than the intrastate rate lawfully established for one-way intrastate travel in general, does not deprive the carrier of due process of law when the service so regulated was established by the carrier voluntarily and the rates fixed by the State are reasonable. *Lake Shore & Michigan Southern Ry. Co.* v. *Smith,* 173 U. S. 684, is distinguished, and the views expressed in that case which are inconsistent with the decision in this one are disapproved.

126 Maryland, 59, affirmed.

THE case is stated in the opinion.

*Mr. F. D. McKenney,* with whom *Mr. Henry Wolf Biklé, Mr. Shirley Carter* and *Mr. John Spalding Flannery* were on the brief, for plaintiff in error, in support of the contention that the order of the Public Service Commission here in question was unconstitutional, relied principally upon *Lake Shore & Michigan Southern Ry. Co.* v. *Smith,* 173 U. S. 684, and *Northern Pacific Ry. Co.* v.

*North Dakota,* 236 U. S. 585, citing in addition the following as sustaining the authority of the *Lake Shore Case: Wisconsin &c. R. R. Co.* v. *Jacobson,* 179 U. S. 287, 297; *Erie R. R. Co.* v. *Williams,* 233 U. S. 685, 701; *Chicago &c. R. R. Co.* v. *Wisconsin,* 238 U. S. 491, 499; *Beardsley* v. *New York C. &c. R. R. Co.,* 162 N. Y. 230; *Commonwealth* v. *Atlantic Coast Line Ry. Co.,* 106 Virginia, 61; *State* v. *Bonneval,* 128 Louisiana, 902; *State* v. *Great Northern Ry. Co.,* 17 N. Dak. 370; *Attorney General* v. *Old Colony R. Co.,* 160 Massachusetts, 62.

*Interstate Consolidated Street Ry. Co.* v. *Massachusetts,* 207 U. S. 79, they distinguished upon the ground that the constitutionality of the state statute there in question—requiring street car companies to carry school children at half fare—was not involved. The statute was an exercise of the State's reserved power over the corporation. The reasoning of the decision in no way detracts from the authority of the *Lake Shore Case.*

The analogy between the *Lake Shore Case* and the case at bar would seem to be complete, for the difference between a 1,000-mile ticket and a 100-trip ticket, both required to be issued contrary to the managerial will of the carrier and at rates less than the maximum or standard one-way single fare, is not fundamental.

*Mr. W. Cabell Bruce* for defendants in error.

MR. JUSTICE DAY delivered the opinion of the court.

This was an action in the Circuit Court No. 2 of Baltimore City, Maryland, to enjoin the Public Service Commission of Maryland from enforcing an order to sell commutation tickets at certain rates specified. The injunction was refused, and on appeal the Court of Appeals of Maryland affirmed the decree and held that although the order fixing the rates declared the same to be

in force for ten years, there should be reserved to the
railroad company the right to apply to the Commission
after the lapse of a reasonable time for a rescission or
modification of its order if experience demonstrated that
the revenue derived under the tariff as established by the
Commission was not properly compensatory for the
services performed. 126 Maryland, 59.

The order of the Commission required the Pennsyl-
vania Railroad Company, lessee of the Northern Central
Railway, to sell tickets for the transportation of passen-
gers between Baltimore and Parkton within the State of
Maryland on the line of the Northern Central Railway.

A table appearing in the opinion of the Court of Appeals
shows the relative rates under the former schedules and
the new order of the Public Service Commission to be as
follows:

| RATES PRIOR TO Nov. 25, 1914. | RATES AS PER SCHEDULE FILED Nov. 25, 1914. | RATES UNDER ORDER P. S. COM., DEC. 23, 1914. |
|---|---|---|
| 1: Round trip, 10 day, 2¼c. per M. | Round trip, no limit, 2½c. per M. | Round trip, 2¼c. per M. |
| 2: Exc. 2–10 days, 2¼c. per M. | Discontinued. | No ruling made. |
| 3: 10-strip ticket, 1 yr., 1 8/10c. per M. | 10-trip, 3 mos., 2¼c. per M. | 10-strip, 3 mos. 2c. per M. |
| 4: 60-trip 1 mo., 2c. for first 3 M., ¼c. for ea. addl. ½ M. | 60-trip, 1 mo. former rate plus 25c. flat. | 60-trip, 1 mo. former rate plus 25c. |
| 5: 100-trip, 1 yr. at double 60-trip. | Discontinued. | 100-trip, 4 mos., former rate, plus $1. |
| 6: 180-trip 3 mos. same as 4, less 10% | 180-trip, 3 mos. at 3 times 60-trip. | 180-trip, 3 mos., former rate plus 75c. |
| 7: 46-trip School, 1 mo., 46/60 of 60-trip. | 46-trip School, 1 mo., 46/60 of 60-trip. | 46-trip School, 1 mo., 46/60 of 60-trip. |

The attack upon the order of the Commission in this
court is based upon the contention that its effect is to
take the property of the railroad company without due
process of law, contrary to the Fourteenth Amendment to

the Constitution of the United States. It is also averred in the bill that the order, if enforced, will work a discrimination against interstate travel in favor of travel within the State, and is otherwise unreasonable and void.

The Court of Appeals of Maryland stated the question to be whether it is within the power of the Public Service Commission to require the establishment of a schedule of commutation rates by the railroad company, not where no such rates had theretofore been established, but where a new system of commutation rates had been proposed by the railroad company and submitted to the Commission. Whether commutation rates should be established was declared to be a question of policy to be decided by the company. The court found authority in the Commission under the statutes of Maryland to revise commutation rates where such rates had already been established by the action of the company. We must accept this definition of authority in the Commission, so far as the state law is concerned, and direct our inquiry to the federal question presented.

The question, as counsel for plaintiff in error states it, is whether a state legislature, either directly or through the medium of a public service commission, under the guise of regulating commerce, may compel carriers engaged in both interstate and intrastate commerce to establish and maintain intrastate rates at less than both the interstate and intrastate standard and legally established maxima. It is asserted that there is no constitutional authority to compel railroad companies to continue the sale of commutation or special class tickets at rates less than the legally established standard or normal one-way single passenger fare upon terms more favorable than those extended to the single one-way traveler.

To maintain this proposition plaintiff in error relies upon and quotes largely from the opinion of this court in *Lake Shore & Michigan Southern Ry. Co.* v. *Smith,* 173

U. S. 684. In that case a majority of this court held a statute of the State of Michigan to be invalid. A previous statute of the State had fixed a maximum passenger rate of three cents per mile. The statute in controversy required the issuing of mileage books for a thousand miles, good for two years, at a less rate. This court held that a maximum rate for passengers having been established, that rate was to be regarded as the reasonable compensation for the service, and that the fixing of the less rate to particular individuals was an arbitrary exercise of legislative power and an unconstitutional interference with the business of the carrier, the effect of which was to violate the provisions of the Fourteenth Amendment to the Federal Constitution by depriving the railroad company of its propery without due process of law and denying to it the equal protection of the law.

The *Lake Shore Case* did not involve, as does the present one, the power of a state commission to fix intrastate rates for commutation tickets where such rates had already been put in force by the railroad company of its own volition, and we confine ourselves to the precise question presented in this case, which involves the supervision of commutation rates when rates of that character have been voluntarily established by the carrier. The rates here involved are wholly intrastate. The power of the States to fix reasonable intrastate rates is too well settled at this time to need further discussion or a citation of authority to support it.

In *Interstate Commerce Commission* v. *Baltimore & Ohio R. R. Co.*, 145 U. S. 263, this court held that a "party rate ticket" for the transportation of ten or more persons at a less rate than that charged a single individual did not make a discrimination against an individual charged more for the same service, or amount to an unjust or unreasonable discrimination within the meaning of the Act to Regulate Commerce. In the course of the opinion the

right to issue tickets at reduced rates good for limited periods upon the principle of commutation was fully recognized. See pp. 277, 278, 279, 280.

Having the conceded authority to regulate intrastate rates, we perceive no reason why such power may not be exercised through duly authorized commissions and rates fixed with reference to the particular character of the service to be rendered.

In *Norfolk & Western Ry. Co.* v. *West Virginia,* 236 U. S. 605, 608, after making reference to *Northern Pacific Ry. Co.* v. *North Dakota,* 236 U. S. 585, this court said:

"It was recognized [in the *North Dakota Case*] that the State has a broad field for the exercise of its discretion in prescribing reasonable rates for common carriers within its jurisdiction; that it is not necessary that there should be uniform rates or the same percentage of profit on every sort of business; and that there is abundant room for reasonable classification and the adaptation of rates to various groups of services."

That the State may fix maximum rates governing one-way passenger travel is conceded. Having the general authority to fix rates of a reasonable nature, we can see no good reason for denying to the State the power to exercise this authority in such manner as to fix rates for special services different from those charged for the general service. In our opinion the rate for a single fare for passengers generally may be varied so as to fit the particular and different service which involves, as do commutation rates, the disposition of tickets to passengers who have a peculiar relation to the service. The service rendered in selling a ticket for one continuous trip is quite different from that involved in disposing of commutation tickets where a single ticket may cover 100 rides or more within a limited period. The labor and cost of making such tickets as well as the cost of selling them is less than

is involved in making and selling single tickets for single journeys to one-way passengers.

The service rendered the commuter, carrying little baggage and riding many times on a single ticket for short distances, is of a special character and differs from that given the single-way passenger.

It is well known that there have grown up near to all the large cities of this country suburban communities which require this peculiar service, and as to which the railroads have themselves, as in this instance, established commutation rates. After such recognition of the propriety and necessity of such service, we see no reason why a State may not regulate the matter, keeping within the limitation of reasonableness.

On the strength of these commutation tariffs, it is a fact of public history that thousands of persons have acquired homes in city suburbs and nearby towns in reliance upon this action of the carriers in fixing special rates and furnishing particular accommodations suitable to the traffic. This fact has been recognized by the courts of the country, by the Interstate Commerce Commission, and quite generally by the railroad commissions of the States.[1]

The question of the power of the Public Service Commission of the State of New York in this respect was before the Appellate Division of the Supreme Court of

[1] Forty-fourth Annual Report of the Railroad Commission for the year 1912 (Mass.), pp. 67, 107, 113; P. U. R. 1915B (Mass.), p. 362; P. U. R. 1915E (R. I.), p. 269; Public Service Commission Reports, Second District of N. Y. (New York), Vol. III, pp. 212, 461; idem, Vol. IV, p. 11; P. U. R. 1915B (N. J.), p. 161; Public Utilities Commission Reports, 1914 (Ill.), Vol. I, pp. 553, 590; Public Utilities Commission Reports, 1913–1914 (Colo.), p. 131; P. U. R. 1915D (Idaho), p. 742; Opinions and Orders of the Railroad Commission (Cal.), Vol. I, pp. 451, 855; idem, Vol. II, p. 910; idem, Vol. III, pp. 5, 30, 32, 749, 800, 807, 973; idem, Vol. V, p. 555; idem, Vol. VI, pp. 853, 1008; idem, Vol. VII, pp. 179, 894; The Commutation Rate Case, 21 I. C. C. 428.

that State in *People ex rel. New York, New Haven & Hartford R. R. Co.* v. *Public Service Commission,* 159 App. Div. Rep., Supreme Court, 531.   In that case it was said:

"Subdivision 4 of section 33 of the Public Service Commissions Law (Consol. Laws, chap. 48 [Laws of 1910, chap. 480], as amd. by Laws of 1911, chap. 546) empowers the Commission to fix reasonable and just rates for such service.   It is urged, however, that the statute is invalid under the rule of *Lake Shore &c. R. Co.* v. *Smith* (173 U. S. 684).   In that case the statutes of Michigan had fixed a maximum passenger rate at three cents per mile.   A subsequent enactment required the issuing of mileage books for 1,000 miles, good for two years, at a less rate. The court held that having fixed a uniform maximum rate as to all passengers, such rate was the reasonable compensation for the service, and that the fixing of a less rate to particular individuals was an unreasonable and arbitrary exercise of legislative power; that it was not for the convenience of the public and thus within the police power, but was for the convenience of certain individuals who were permitted to travel upon the railroads for less than the reasonable rate prescribed by law; that the law was, therefore, in violation of the Fourteenth Amendment of the Federal Constitution in depriving the company of its property without due process of law and by depriving it of the equal protection of the laws.

"In *Beardsley* v. *N. Y., L. E. & W. R. R. Co.* (162 N. Y. 230) the Court of Appeals felt constrained by the *Smith* case to declare the Mileage Book Law of this State invalid as to companies in existence at the time of its passage, but in *Purdy* v. *Erie R. R. Co.* (162 N. Y. 43) that law was held valid as to companies organized after the statute was passed.

"In *Louisville & Nashville R. R. Co.* v. *Kentucky* (183 U. S. 503), after citing the *Smith* case and like cases, the court says (at p. 511): 'Nor, yet, are we ready to carry the

doctrine of the cited cases beyond the limits therein estab-
lished.'

"In the Minnesota Rate Case (*Simpson* v. *Shepard*, 230
U. S. 352) the legality of an order of the Commission of
that State was recognized which fixed a maximum freight
rate and passenger rate, the latter at two cents a mile as
the maximum fare for passengers twelve years of age or
over, and one cent a mile for those under twelve years of
age.

"In *Interstate R. Co.* v. *Massachusetts* (207 U. S. 79) the
Massachusetts law prescribing special rates less than the
maximum for school children was held valid.  These cases
indicate that the *Smith* case is not to be extended beyond
the facts upon which it rests.

"The *Smith* case distinguishes itself from this case where
the court (at p. 693) says: 'This act is not like one estab-
lishing certain hours in the day during which trains shall
be run for a less charge than during the other hours.  In
such case it is the establishing of maximum rates of fare
for the whole public during those hours, and it is not a
discrimination in favor of certain persons by which they
can obtain lower rates by purchasing a certain number
of tickets by reason of which the company is compelled to
carry them at the reduced rate, and thus, in substance, to
part with its property at a less sum than it would be
otherwise entitled to charge.  The power to compel the
company to carry persons under the circumstances as
provided for in this act, for less than the usual rates, does
not seem to be based upon any reason which has hitherto
been regarded as sufficient to authorize an interference
with the corporation, although a common carrier and a
railroad.'

"Our flourishing cities owe their position and prosperity,
in part, to the commutation rates for suburban service;
the health and welfare of the public are concerned that
people doing business in the large cities may live in the

country where the surroundings are pleasanter, more healthy and to the advantage of themselves and their families. It is a known fact that such rates exist upon all railways entering large cities, and have usually been established by the companies voluntarily in the interest of themselves and the public. The service is different in its nature from the other passenger service. It is so universal, of such large proportion, has become so necessary to the public that it cannot be said that the fixing of reasonable and just rates for it is unusual or unreasonable, or the granting of a benefit to individuals and not for convenience to the public.

"Nearly one-half of the passengers handled by the relator at the Grand Central Terminal were of this class. Perhaps the same ratio would exist upon the other railroads serving the city. We conclude that the statute in question is valid as conferring a power on the Commission to regulate rates for the public convenience and welfare."

That decision was affirmed by the Court of Appeals of New York on the opinion of the Appellate Division. 215 N. Y. 689.

The subject was elaborately considered by the Interstate Commerce Commission in the *Commutation Rate Case*, 21 I. C. C. 428, in which the authority of the Commission to fix reasonable rates was sustained. In the course of the opinion, Commissioner Harlan, speaking for a unanimous Commission, said:

"Another case strongly relied upon by the defendants is *L. S. & M. S. R. R. Co.* v. *Smith*, 173 U. S. 699. It there appeared that the legislature of the state of Michigan had fixed the maximum passenger fare to be charged by railroad companies for local journeys within the state. By a subsequent enactment it required the carriers to sell 1,000-mile tickets for use within the lower peninsula at a price not exceeding $20 and in the upper peninsula at a price not exceeding $25. Various conditions affecting the

use of the tickets were also fixed by the act, and among others that they should be valid for two years after the date of purchase. It was held that in the exercise of its general police power a state may fix maximum fares, but that it may not fix a rate for 1,000-mile tickets that involves a discrimination in favor of those who buy them. The statute was held to be invalid. The case, however, involved mileage tickets which, we must repeat, differ very essentially in character from commutation tickets.

"We have been referred to no other adjudication by the courts and are left to conclude that the precise point now before us has not been passed upon by the courts.

"It will not be necessary to dwell here upon the importance of the question not only to the particular suburban communities involved on the record before us, but to many other such communities throughout the country, the prosperity and growth of which largely depend upon an efficient and reasonable commutation service. Many such communities have not only been encouraged by the carriers, but were, in fact, originally established largely on their initiative. Suburban property has been bought, homes have been established, business relations made, and the entire course of life of many families adjusted to the conditions created by a commutation service. This may not have been done on the theory that the fares in effect at any particular time would always be maintained as maximum fares, but countless homes have been established in suburban communities in the belief that there would be a reasonable continuity in the fares and that the carriers in any event would perform the service at all times for a reasonable compensation.

"Nor need we stop to point out the distinction between commutation tickets on the one hand and excursion and mileage tickets on the other. Compared with the normal one-way fare all such tickets may be said to be abnormal. But the resemblance stops at that point. Although they

are mentioned together in section 22, the force and effect of that provision must necessarily differ with the differing character of the several kinds of tickets. It seems to be settled under that section that a carrier may enter upon the policy and practice of issuing mileage books and excursion tickets at less than its regular normal fare for the one-way journey, and, having adopted such a policy, may subsequently withdraw from it and refuse longer to issue such tickets. That has been the view of this Commission, and is the view generally entertained, although there may be exceptional circumstances where a different conclusion would be required. It by no means follows, however, that a carrier under section 22 may exercise the same scope and freedom of action with respect to commutation tickets."

The reasoning of these decisions is sound and involves no violation of the Federal Constitution. True it is that it may not be possible to reconcile these views with all that is said in the opinion delivered for the majority of the court in the case of *Lake Shore & Michigan Southern Ry. Co.* v. *Smith, supra.* The views therein expressed which are inconsistent with the right of the States to fix reasonable commutation fares when the carrier has itself established fares for such service, must be regarded as overruled by the decision in this case.

We find no error in the decree of the Court of Appeals of Maryland, and the same is

*Affirmed.*

Dissenting: THE CHIEF JUSTICE, MR. JUSTICE McKENNA and MR. JUSTICE McREYNOLDS.