CAPITAL TRANSIT CO. *v.* BOSLEY ET AL.

[No. 67, October Term, 1948 (Adv.)]

504

*Decided November 11, 1948.*

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, HENDERSON, and MARKELL, JJ.

*Clarence W. Miles,* with whom were *Harrison L. Winter, Miles, Walsh, O'Brien & Morris, F. G. Awalt, Daryal A. Myse* and *Hewes & Awalt* on the brief, for the appellant.

*S. Ralph Warnken* and *Philip H. Dorsey, Jr., People's Counsel,* for the appellees.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from an order dismissing, on demurrer, a bill to set aside an order of the Public Service Commission fixing fares to be charged by plaintiff for school children in Prince George's or Montgomery County.

Plaintiff, a District of Columbia corporation, operates a public passenger transportation system in Washington, with some nineteen bus lines and three electric railway lines extending into Prince George's or Montgomery County over some thirty-three routes there. Plaintiff filed with the Commission a schedule of new fares and

fare zones on many of its Maryland lines. Thereupon the Commission instituted an investigation of plaintiff's "rates and fares covering intrastate passenger transportation service in Maryland" and, pending hearing and decision, suspended operation of the new fares until April 8, 1948 and later until May 8, 1948. Art. 23, sec. 371. After extended hearings the Commission on April 22, 1948 filed a full opinion and on April 22d and 29th entered the orders now under review.

Plaintiff in 1934 succeeded to the operation of a public passenger transportation system that had been started many years before as separate units, later brought into one system. The system has been expanded and enlarged from time to time as communities have grown and new developments have sprung up. In recent years, the expansion has been largely by motor bus, with little, if any, extension of rail lines, the tendency recently being to substitute bus lines for rail lines. Expansion of the system and extension of its lines to keep pace with the rapid development of the Maryland suburban sections resulted in lack of uniformity of fares in the various areas. Plaintiff's fare zones ranged from less than a mile to four miles, its cash fares from five cents to ten cents per zone, and on some of its lines it had a wide variety of ticket and weekly pass fares not uniform in application or amount.

Plaintiff's new fares and zones were designed (1) to eliminate the ticket and pass fares and establish a uniform cash fare of five cents per zone, covering all Maryland operations, with zones approximating a mile and a half in length and (2) thereby to increase its revenues so as to reduce its annual losses in Maryland to about $178,000 a year if there is no loss in passengers. At the hearing plaintiff's evidence showed a net loss, for the year ended September 30, 1947, of $117,963 from Maryland rail operations, $470,191 from bus operations, a total of $588,154 from all Maryland operations. To stop these losses, by bringing up the revenues at least to equal expenses, the Commission says, "the only logical way to obtain the additional revenue would be to increase fares".

The Commission also says: "The revenue figures used by the Company were not seriously questioned. * * * The method used by the Company in allocating * * * expenses was the subject of some controversy, but the record does not show that some other method would be preferable from the standpoint of the users of the service. * * * In view of the very large deficit now being experienced in the Maryland operation, it is clear to the Commission that by no possible means of allocation of the expenses would it be possible to change the result to such an extent that the deficit would be eliminated. Even if we assume that, by use of other methods in apportioning costs, it might be possible to show a smaller annual loss for the Maryland lines, by no conceivable means would it be possible wholly to eliminate the loss, let alone provide a profit sufficient to yield a reasonable return upon the value of Company's property used in rendering service in Maryland. The commission, therefore, is convinced that it is only proper that the Company should be permitted to revise its fares and fare zones in an effort to recover some of its loss."

The new fares were estimated to result in an annual increase in revenues of over $400,000 annually, assuming a 100% realization of the effect of the new fares. The Commission believes that an estimate of 100% realization is "over-optimistic," but "does not believe that a fare change of the size involved here would seriously affect riding habits."

When plaintiff filed its schedule of new fares and zones, it also applied to the Commission for authority to abandon its Beltsville car line, to stop an annual loss of about $50,000 under existing fares or about $33,000 under the new fares. On April 22, 1948, the date of the opinion and order in the instant case, the Commission dismissed the Beltsville application. The Beltsville order is not now before us for review. In the instant case the Commission says: "It becomes apparent from the showing that has been made on this record that there would be no point in determining at this time the value of the Com-

pany's property used and useful in rendering service in Maryland or of determining what amount of revenue is necessary in order to insure for the Company a reasonable rate for return. The revenues are deficient by such an amount as to make the questions of fair value and rate of return, for the purpose of this proceeding, of no more than academic interest. The Commission, therefore, will not undertake to determine property values or rate of return. Earlier in this opinion reference was made to an application filed by the Company for authority to abandon its Route 84 car line operating between Beltsville and Branchville. The Company alleges that this operation is conducted at a loss, but even with the saving which it estimates could be effected by abandoning the line it does not appear that revenues would be sufficient to provide any return to the Company." The Commission "takes note" of "an ominous warning" in a statement by plaintiff, that the new fares proposed will provide a sound basis for experience upon which it can base additional Maryland fare changes to provide a reasonable return upon the value of its property, and hopes "that it will not become necessary to seek further rate increases."

By the Commission's order of April 22, 1948 plaintiff was permitted to make its schedule of new fares and zones effective, "provided that [it] shall, at the same time, establish and make effective a schedule" for the sale of five tokens or tickets for fifteen cents, "for use by school children , including those attending high schools", each good for one ride in a Maryland zone. Plaintiff having declined to accept this order, the Commission on April 29, 1948, by an order reciting that plaintiff "now provides for the sale of tickets for the use of school children on certain of its lines" in Maryland "at less than the maximum adult fare", and that for plaintiff to charge "the same fare for school children as it charges for adults will result in unjust and unreasonable fares for school children" and that a three-cent ticket fare for school children will be "just and reasonable", ordered that plaintiff

establish a schedule for three-cent ticket fares for school children and that until it shall do so it shall charge its existing fares, "it being the opinion and finding of the Commission that such rates and fares constitute just and reasonable charges" until such time as the three-cent fares for school children shall be established.

Besides direct quotations, the statements of fact we have made are made in the Commission's opinion. The Commission also says: "A matter that was the subject of considerable discussion at the hearing was the possibility of including in the schedule of the Company a provision which would make available a reduced fare for school children. The ticket fares now in use are available and apparently are used by school children to a great extent. The exact extent of their use is not available and there is nothing in the record to indicate how many school children regularly ride on the Company's vehicles. It is the general conclusion, however, that it is likely that a great many of the children use the ticket fare which equates to 4.2 cents per zone and on that basis under the revised fares, the cost of their transportation would increase from 4.2¢ to 5¢ per zone. * * * It was testified at the hearing that while no actual data are available to support the conclusion, it is the opinion of the Company's representatives that most school children ride no farther than the limit of the zone in which they board the vehicle". The Commission further says: "On the showing that has been made as to the Company's earnings and expenses it is perhaps difficult to justify a requirement that the Company provide a fare differential in favor of school children and the point was made by a Company witness that it costs just as much to provide service for a child attending school as it costs for an adult person travelling to and from his place of employment". The Commission then attempts to justify a three-cent fare by "a common practice among carriers" to provide fares for school children "somewhat less than [fares] for persons who are employed", and by the fact that education is desirable and "to a certain point" man-

datory and the transportation costs "can and frequently do become burdensome" upon parents. Of plaintiff's 33 Maryland routes, the "ticket fare" of 4.2 cents for school children is applicable to only three routes (including the Beltsville route and another of its three car lines), all in Prince George's County. By a joint resolution of Congress of 1933, in effect a term of plaintiff's charter (*Interstate Consolidated Street Railway Company v. Massachusetts*, 207 U. S. 79, 28 S. Ct. 26, 52 L. Ed. 111, 12 Ann Cas. 555; *Miller v. Capital Transit Co. [Public Utility Commission, D. C.]* 43 P. U. R. 152 [1942]), a three-cent fare for school children is in effect in the District of Columbia. At the hearing resolutions of civic associations and letters showed a desire for special rates for school children in Montgomery County. A Montgomery County official, who represented the county, testified that he felt "a straight five-cent fare for school children irrespective of distance would be a good thing". The five-cent fare he "just pulled out of the hat." By the new schedule the total number of zones in plaintiff's 33 routes is increased from 59 to 68. A witness for plaintiff testified that, in his judgment, the increase which would come from the fares paid by school children under the proposed new schedule would be "a very, very small portion" of the increase from fares from adults, because most of the children would limit their riding within one zone, many who already paid five cents would continue to pay five cents, others would have their fares increased only from 4.2 to 5 cents but the number of people who use that 44 ticket (4.2 cent) book is very small, and the new five-cent fare would actually result in a reduction of fares to some school children; and that the school children ride in the morning peak, a more expensive service than off-peak service.

We think it is impossible to justify the three-cent fare for school children and that the Commission's order is arbitrary, unsupported by substantial evidence and unlawful. The Commission's opinion demonstrates that the existing fares are unreasonable and the new fares are

not more than reasonable. Yet its order purports to find that existing fares are reasonable *until* fares for school children are decreased and plaintiff's losses thus increased. Plaintiff cannot be coerced to make an unreasonable decrease in fares by unlawful denial of necessary fare increases. The Commission does not propose or invite any further increase in other fares to offset the additional losses to be incurred by the decrease in fares for school children or the annual loss of $178,000 expected under the new fares. On the contrary it expresses the hope "that it will not be necessary to seek further rate increases".

In 1910 the Public Service Commission Law provided that the Commission, when it finds fares to be unreasonable or otherwise unlawful, "shall determine the just and reasonable * * * fares * * * to be thereafter observed and in force as the maximum to be charged". Code of 1939, Art. 23, Sec. 381. An Act of 1912 provides that the Commission, when it finds that the issuance of "mileage, excursion, school commutation or commutation passenger tickets, or joint interchangeable mileage tickets, would be a desirable, advantageous and reasonable thing for the people concerned to demand", shall order the carrier "to establish such rates and issue such tickets as the * * * commission may deem reasonable and proper". Art. 23, sec. 383. An Act of 1927 provides that the power of the Commission under section 381 to determine just and reasonable maximum rates "shall include the power to determine the just and reasonable rates * * * to be thereafter observed and in force as the minimum or maximum and minimum to be so charged." Art. 23, sec. 382. The power to fix minimum rates apparently relates to prevention of unjust discrimination or destructive competition and has no bearing on the instant case.

Before commission regulation of rates many railroads established reduced mileage, commutation or other wholesale rates, for the purpose of increasing their business and earnings. Such wholesale rates usually reflected real

or supposed lower cost of wholesale business. Sometimes they may also have reflected what the traffic would— or would not—bear. A reason for, or result of, establishment of wholesale rates is a redistribution of charges among different classes of customers. Some such rates, e. g., mileage rates, evidently did not reflect, or ceased to reflect, lower cost of service and have practically disappeared, notwithstanding legislation such as the Act of 1912.

In *Lake Shore & Michigan Southern R. Co. v. Smith*, 173 U. S. 684, 19 S. Ct. 565, 43 L. Ed. 858, it was held that a state, having exercised its power to fix maximum rates, could not compel sale of mileage tickets at lower rates. In *Pennsylvania R. Co. v. Public Service Commission*, 126 Md. 59, 94 A. 330, Ann. Cas. 1917B, 1144 (affirmed, *Pennsylvania R. Co. v. Towers*, 245 U. S. 6, 38 S. Ct. 2, 62 L. Ed. 117, L. R. A. 1918C, 475), the only previous decision of this court which involved the power to regulate commutation rates, the court mentioned, but did not pass upon the validity or construction of, the Act of 1912. The court said: "The question is not now presented whether it is within the power of the Public Service Commission to require the establishment of a schedule of commutation rates by a railway company in a case where no such rates had theretofore existed. Upon that no opinion is now expressed. What the court is now called to pass upon is the reasonableness of commutation rates, where such a system of rates has long been in operation by the action of the company, and where a modification of those rates was proposed by the railway company and by it submitted to the Commission. Whether commutation rates shall be established at all is a question of policy upon the part of the company, but if such a policy is adopted there will still remain the reasonableness of the manner in which that policy is carried out." 126 Md. at page 63, 94 A. at page 332, Ann. Cas. 1917B, 1144. The commission approved increases, smaller in amount than those proposed by the railroad, in commutation rates; its action was sustained on the

facts. Both the common law and statutes permit, but ordinarily do not require, classification of rates with regard to differences in cost of service and other considerations. The state has a broad field for the exercise of its discretion in prescribing reasonable rates; it is not necessary that there should be uniform rates or the same percentage of profit on every sort of business; there is abundant room for reasonable classification and the adaptation of rates to various groups of service. But the state may not select a class of traffic and compel the carrier to transport it at less than cost, or for a merely nominal compensation. *Lewis v. Mayor and City Council of Cumberland*, 189 Md. 58, 68, 54 A. 2d 319, 324; *Pennsylvania R. Co. v. Public Service Commission, supra.* It is not *per se* unreasonable to charge either the same or different fares for school children as for adults. On 28 of plaintiff's 33 routes the same fares have been charged for both. As has already been said, the order now under review not merely requires service at less than cost but imposes a loss in addition to loss to be sustained under plaintiff's new increased rates.

From the fact that plaintiff has not yet proposed rates sufficient to yield any return on the value of its property, it seems to be argued that its business is "moribund", its property worthless except as scrap, and it has no right to protection against additional forced losses. There is no evidence that the business is moribund, and if it were the buses and other property (except tracks and the like) would not be scrap. Plaintiff apparently regards its Beltsville car line as "moribund," but the Commission has refused to permit abandonment of service. Without loss of value plaintiff's buses could be moved wherever buses are needed.

It is also argued, and seems to be held by the lower court, that the Commission's order is within the "police power" and the loss is a question of degree and cannot be predicted with certainty without a trial period. It is argued that the fare reduction is applicable to only 113,408 children in a year and the loss of $2,268 is within

the doctrine *de minimis*. Doubtless the doctrine de *minimis* is applicable in rate cases as in other cases. Whether the doctrine would be applicable to an annual loss of $2,268, *in addition to* $178,000, we need not decide. The 113,408 children represent only three of plaintiff's 33 routes; obviously school children must have constituted much more than 1% of plaintiff's 11,000,000 Maryland passengers.

The "police power", at most, is the power of government. Exercise of this power sometimes causes uncompensated expense. But the State itself cannot under the guise of the police power take private property for public use without compensation. Its power to provide, and pay for, transportation for school children (*Board of Education v. Wheat*, 174 Md. 314, 199 A. 628) cannot be exercised by compelling, without paying for, transportation by plaintiff.

When it is doubtful whether a proposed increase or decrease in fares will yield a fair return, a trial period may be necessary. *Pennsylvania R. Co. v. Public Service Commission, supra*, 126 Md. 59, 79-81, 94 A. 330, Ann. Cas. 1917B, 1144. In the instant case no trial period is justified. The Commission does not believe that the proposed fare increase "would seriously affect riding habits". There is nothing to warrant a different belief as to the Commission's fare decrease. Assuming, however, that any fare increase will decrease the number of passengers, and vice versa, a twenty per cent fare decrease might *decrease* gross and net revenue by *less* than twenty per cent but could not *increase* revenue. Relief against imposition of additional loss cannot be delayed to ascertain more nearly the amount of the additional loss.

As has already been stated this case was decided below on demurrer to the bill. Although not mentioned in the bill, as filed with the bill or as part of it, a transcript of the proceedings, including evidence, before the Commission was filed with or after the bill. *Cf.* Art. 23, sec. 417. Apparently the transcript was regarded by the parties and by the lower court as part of the bill. It

has been so regarded by us in considering the sufficiency or effect of the evidence to sustain or set aside the Commission's order. The case, therefore, presents no question as to sufficiency of allegations of fact to sustain conclusions in the bill. *Cf. Hartman v. Public Service Commission,* 179 Md. 285, 19 A. 2d 709; *Bosley v. Quigley,* 189 Md. 493, 56 A. 2d 835.

As the case has thus been fully heard on the merits, though technically only on demurrer to the bill, nothing remains but to set aside the Commission's orders with respect to fares for school children.

> *Order reversed, with costs, and cause remanded for disposition in accordance with this opinion.*