Olin Mathieson Chemical Corporation *v.* White Cross Stores, Inc., Appellant.

Argued January 16, 1964. Before BELL, C. J., MUS-MANNO, JONES, COHEN, EAGEN, O'BRIEN and ROBERTS, JJ.

*James P. McArdle,* with him *Paul F. Laughlin, Edward I. Goldberg,* and *McArdle, Harrington & McLaughlin,* for appellants.

*Benjamin M. Quigg, Jr.,* with him *Clyde P. Bailey, Angus M. Russell, Russell C. Dilks,* and *Weller, Wicks & Wallace,* and *Morgan, Lewis & Bockius,* for appellee.

OPINION BY MR. JUSTICE EAGEN, March 26, 1964:

The single question presented for determination by this appeal is the constitutionality of the Pennsylvania Fair Trade Act of June 5, 1935, P. L. 266, as amended, 73 P.S. §7 et seq., as applied to the nonsigners of "Fair Trade" price maintenance contracts.

The corporate-plaintiff is the manufacturer of drugs, pharmaceuticals and other allied products, distributed under the trade-mark "Squibb." In this action, the court below enjoined the appellants-defendant from retailing these products at prices less than the stipulated minimum prices contained in fair trade contracts in existence throughout the State of Pennsylvania. The appellants were not parties to, nor did they sign, these agreements. However, it is undisputed that they knew plaintiff's products were "fair traded" and, with this knowledge, advertised and sold such commodities below the stipulated minimum prices.

Section 2 of the statute provides: "Wilfully and knowingly advertising, offering for sale, or selling any commodity at less than the price stipulated in any contract entered into pursuant to the provisions of section one of this act, whether the person so advertising, offering for sale, or selling is, or is not, a party to such contract, is unfair competition and is actionable at the suit of such vendor, buyer or purchaser of such commodity."

Fair trade legislation precludes the cutting of the established price of any commodity identified by the trade-mark or brand of the producer: *Bristol-Myers Co. v. Lit Bros., Inc.*, 336 Pa. 81, 6 A. 2d 843 (1939). Those who support such legislation strenuously urge that it protects the manufacturer, retailer and consumer from varied harmful consequences which allegedly would result from cutthroat competition. They submit that it is, therefore, a reasonable exercise of the police power and is designed to protect the convenience, prosperity, health, morals, safety and welfare of the public generally.

Whether or not such legislation does in fact protect the best interests of the buying public has long been the subject of serious dispute. Many recent statistical studies by competent authority have concluded that,

rather than being benefited by such laws, the consumer has actually been harmed, and that the whole scheme of fair trade acts is one for private, rather than public gain. See, 49 Yale L.J. 607, and 21 U. Chi. L. Rev. 175.

Our inquiry is necessarily restricted to the legal aspects involved. It is not for us to enunciate public policy. That responsibility rests with the legislature and is for that body alone to resolve.

This Court previously sustained the constitutionality of the Pennsylvania Fair Trade Act as applied to nonsigners of retail price maintenance agreements in *Burche Co. v. General Elec. Co.*, 382 Pa. 370, 115 A. 2d 361 (1955). Our careful review of that decision now leads to the conviction that it was in error.

*Burche* relying largely on *Old Dearborn D. Co. v. Seagram-Distillers Corp.*, 299 U.S. 183, 57 S. Ct. 139 (1936), ruled, inter alia, that the Pennsylvania statute was not an unlawful delegation of legislative power. With this, we do not agree.

*Old Dearborn,* as a careful study will bear out, is not precedent for the proposition that the nonsigner clause in a state price fixing statute, delegating legislative power to private individuals, does not violate the state constitution. See, 1 Davis, Administrative Law Treatise, Section 2.14 (1958); Notes, Fair Trade and the State Constitution—A New Trend, 10 Vand. L. Rev. 415 (1957), and Conant, Resale Price Maintenance: Constitutionality of Nonsigner Clauses, 109 U. of Pa. L. Rev. 539 (1961). Further, it is our considered conclusion that the nonsigner clause in the Pennsylvania Fair Trade Act is clearly violative of Art. II, §1, of the Pennsylvania Constitution.

Price regulatory power vests only in the elected legislative body. It may in limited ways be delegated to other responsible governmental agencies, such as public service or utility commissions: *Pennsylvania*

*R.R. Co. v. Towers,* 245 U.S. 6 (1917). However, it may not be delegated to private persons. The vesting of a discretionary regulatory power over prices, rates or wages, in private persons violates the essential concept of a democratic society and is constitutionality invalid. See, *A. L. A. Schechter Poultry Corporation v. United States,* 295 U.S. 495, 55 S. Ct. 837 (1935); *Carter v. Carter Coal Co.,* 298 U.S. 238, 56 S. Ct. 855 (1936); *Bissell Carpet Sweeper Company v. Shane Co.,* 237 Ind. 188, 143 N.E. 2d 415 (1957); *Quality Oil Company v. E. I. DuPont DeNemours & Co.,* 182 Kan. 488, 322 P. 2d 731 (1958); *Remington Arms Company v. G. E. M. of St. Louis, Inc.,* 257 Minn. 562, 102 N.W. 2d 528 (1960); *Union Carbide & Carbon Corp. v. Bargain Fair,* 167 Ohio St. 182, 147 N.E. 2d 481 (1958).

Moreover, where price regulation is delegated to a governmental agency, constitutional procedures are mandatory. The agency's action is legislative in character and is subject to the same tests and standards as a legislative enactment: *Prentis v. Atlantic Coast Line,* 211 U.S. 210 (1908). Once the basic law is established by statute, the legislature may delegate the agency to make detailed rules for the statute's operation. However, these rules must conform to statutory standards, be adopted after hearing, may not be arbitrary, and are always subject to judicial review. See, *Panama Refining Co. v. Ryan,* 293 U.S. 388, 55 S. Ct. 241 (1935); *Morgan v. United States,* 304 U.S. 1, 58 S. Ct. 773 (1938), and *Los Angeles Gas & Elec. Corp. v. Railroad Com'n,* 289 U.S. 287, 53 S. Ct. 637 (1933).

In the Pennsylvania Fair Trade Act, these protective processes are completely absent. Fair hearing and judicial review are not available, even though the fixed price is grossly unfair or completely arbitrary. The retailer and the buyer have no recourse. The producer enjoys the unbridled power to stipulate the price he pleases and at that price the retailer must sell and the

buyer must buy. In this respect, the producer is the unrestrained sovereign. No intelligent standards control.

It is no answer to the above to say that the retailer and the buyer, having notice of the prices fixed, are under no obligation to sell or buy the particular commodity. Under the statute, both come under the coercive price control of private persons not directly in contract with them. As noted before, compulsory price regulation is a legislative function. It belongs only to elected government.

The Pennsylvania Fair Trade Act, as applied to nonsigners of price maintenance contracts, is, therefore, unconstitutional.

It may be advanced that despite the above conclusion, we should permit the ruling in *Burche* (supra)[1] to stand in deference to the principle of Stare Decisis.

While it is true that great consideration should always be accorded precedent, especially one of long standing and general acceptance, it doesn't necessarily follow that a rule merely established by precedent is infallible. Moreover, the courts should not perpetrate error solely for the reason that a previous decision, although erroneous, has been rendered on a given question. This is particularly true where no fixed rights of property are involved or where great injustice or injury will result by following the previous erroneous decision. If it is wrong it should not be continued. Judicial honesty dictates corrective action. As stated by this court in *Commonwealth ex rel. Margiotti v. Lawrence*, 326 Pa. 526, 193 A. 46 (1937), at 530 and 531, quoting Cooley, Constitutional Limitations (8th Ed. 1927), Vol. 1, page 121, " '. . . when a question in-

---

[1] *Burche* is the only instance wherein the constitutionality of the Pennsylvania Fair Trade Act was heretofore considered by this court.

volving important public or private rights, extending through all coming time, has been passed upon on a single occasion, and which decision can in no just sense be said to have been acquiesced in, it is not only the right, but the duty, of the court, when properly called upon, to re-examine the questions involved, and again subject them to judicial scrutiny. We are by no means unmindful of the salutary tendency of the rule stare decisis, but at the same time we cannot be unmindful of the lessons furnished by our own consciousness, as well as by judicial history, of the liability to error and the advantages of review.' " See, also, *Kelley v. Earle,* 325 Pa. 337, 190 A. 140 (1937) ; *West Coast Hotel Co. v. Parrish,* 300 U.S. 379, 57 S. Ct. 578 (1937) and the opinion of Mr. Justice BRANDEIS in *Burnet v. Coronado Oil & Gas Co.,* 285 U.S. 393 (1932).

Decree reversed. Each party to pay own costs.

---

DISSENTING OPINION BY MR. CHIEF JUSTICE BELL:

This Court, as recently as 1955, *specifically* and *unanimously* decided in *Burche Co. v. General Electric Co.,* 382 Pa. 370, 115 A. 2d 361, that Pennsylvania's Fair Trade Act was constitutional. In the instant case, this Court adopts all the theories, all the contentions, and all the arguments which were made and carefully considered and rejected in *Burche* as well as in prior cases, and then *expressly overrules Burche,* supra. Furthermore this Court has by clear and necessary implication sustained the constitutionality of this Act—even as to non-signers—in *Olin Mathieson Chemical Corp. v. L. & H. Stores, Inc.,* 392 Pa. 225, 139 A. 2d 897; *Lentheric, Inc. v. F. W. Woolworth Co.,* 338 Pa. 523, 13 A. 2d 12; *Gillette Company v. Master,* 408 Pa. 202, 213, 182 A. 2d 734; *Gulf Oil Corp. v. Mays,* 401 Pa. 413, 416, 164 A. 2d 656; *Sinclair Refining Co. v.*

*Schwartz,* 398 Pa. 60, 157 A. 2d 63; *Bristol-Myers v. Lit Brothers,* 336 Pa. 81, 6 A. 2d 843.

In prior decisions of this Court, I have stated my opposition to the Pennsylvania Fair Trade Act but added—what the majority opinion even now strangely admits—that it is for the Legislature and not the Courts to legislate and to enunciate public policy in this field. Nevertheless, today, this Court once again treats the principle of stare decisis as virtually obsolete. The frequency, and the ofttimes strained reasoning, with which Supreme Courts are now overruling prior well-settled law—with no justifiable reason except that Judges think they are improving the public weal—is alarming.

The majority has expressly overruled *Burche Co. v. General Electric Co.,* 382 Pa., supra, but, we repeat, has overlooked or ignored the undoubted fact that it also has impliedly overruled the six decisions of this Court which are hereinabove cited. Ever since Lord Coke, Chief Justice of England, enunciated (circa 1600) the famous and until recently the time-honored maxim of the law: "The knowne certaintie of the law is the safetie of all," Stare Decisis has been one of the *bed-rocks* upon which the House of Law has been erected and maintained. This famous maxim has been a beacon light for Anglo-American Courts, for text authorities and for law-abiding Americans ever since the foundation of our Country.

In *Brown v. Allen,* 344 U.S. 443 (1953), Mr. Justice JACKSON (in a concurring opinion on the abuse of the writ of habeas corpus) aptly and pertinently said (page 535) : "Rightly or wrongly, the belief is widely held by the practicing profession that this Court no longer respects impersonal rules of law but is guided in these matters by personal impressions which from

time to time may be shared by a majority of Justices. Whatever has been intended, this Court also has generated an impression in much of the judiciary that *regard for precedents and authorities is obsolete, that words no longer mean what they have always meant to the profession, that the law knows no fixed principles.*"*

Mr. Justice FRANKFURTER, in his concurring opinion in *Green v. United States,* 356 U.S. 165, 192 (1958) said (page 192) : "To be sure, it is never too late for this Court to correct *a misconception in an occasional decision, even on a rare occasion* to change a rule of law that may have long persisted but also have long been questioned and *only fluctuatingly applied.* . . . *The admonition of Mr. Justice* BRANDEIS *that we are not a third branch of the Legislature should never be disregarded.*"

I repeat what I said in my concurring opinion in *Michael v. Hahnemann M. C. & Hospital,* 404 Pa. 424, 172 A. 2d 769 (pages 437, 438, 439) : "In a Constitutional Republican form of Government such as ours, which is based upon law and order, *Certainty and Stability are essential.* Unless the Courts establish and maintain certainty and stability in the law, businessmen cannot safely and wisely make contracts with their employees or with each other; the meaning of wills, bonds, contracts, deeds and leases will fluctuate and change with each change in the personnel of a Court; property interests will be jeopardized and frequently lost or changed; Government cannot adequately protect law-abiding persons or communities against criminals; private citizens will not know their rights and obligations; and public officials will not know from week to week or month to month the powers and limitations of Government. This has been recognized for centuries by English-speaking peoples. . . .

---

* Italics throughout, ours.

"It is obvious, if we are to progress, that there always will be exceptions to every general rule or principle, and that neither the law nor the principle of stare decisis can or should be as immutable as the laws of the Medes and the Persians. Nevertheless, it is obvious, at least to me, that the principle of stare decisis should not be ignored or extirpated, actually or effectually, because of changes in the personnel of a Court. Mr. Justice FRANKFURTER has stated the two exceptions which to him seem justifiable. I agree with him, and while I would express the same thoughts a little differently, I would go further. I would hold that the principle of Stare Decisis should always be applied, *irrespective of the changing personnel of this (or any Supreme) Court,* except in the two situations set forth by Justice FRANKFURTER and in the following situations: (1) Where the Supreme Court of Pennsylvania is convinced that prior decisions of the Court are irreconcilable, or (2) *the application of a rule or principle has undoubtedly created great confusion;* or (3) in those rare cases where the Supreme Court of Pennsylvania is *convinced* that the reason for the law *undoubtedly* no longer exists, and [change of circumstances or] modern circumstances and Justice combine to require or justify a change, and no one's present personal rights or vested property interests will be injured by the change. Change of circumstances or modern circumstances does not mean, nor has it ever heretofore been considered as the equivalent of 'change of personnel in the Court,' or the substitution of the social or political philosophy of a Judge for the language of the Constitution or of a written instrument, or well settled principles of law."

This is not an isolated instance of overruling just *one* case, as the majority Opinion indicates. Notwithstanding the lip service which from time to time some Justices pay to stare decisis, every Judge and every

lawyer who has read the decisions of this Court in the last half dozen years knows that stare decisis is rapidly becoming as rare as the "Dodo Bird."*

---

\* This Court, from 1957 to date, has expressly overruled, or by radically changing the law, has by necessary implication overruled *30* prior decisions of the Court. A few outstanding examples are: *Smith v. Bell Telephone Co.*, 397 Pa. 134, 137, 153 A. 2d 477 (where the Court *expressly* overruled *18* of its recent decisions) ; *Westbury Realty Corporation v. Lancaster Shopping Center, Inc.*, 396 Pa. 383, 387, 389, 152 A. 2d 669 (where the Court said, "This situation requires a new approach" and thereby by implication overruled more than 20 prior decisions) ; *Commonwealth v. Redline*, 391 Pa. 486, 515-516, 137 A. 2d 472 (where the Court *expressly* overruled one very recent decision and undoubtedly overruled four additional recent decisions and repudiated all the basic reasons and fundamental principles upon which the prior decisions of this Court in felony murder cases were predicated) ; *Catherwood Trust*, 405 Pa. 61, 81-83, 173 A. 2d 86 (where the Court *expressly overruled three* of its recent decisions and impliedly but clearly overruled three additional decisions of this Court) ; *Commonwealth ex rel. Johnson v. Myers*, 402 Pa. 451, 454, 461, 167 A. 2d 295 (where the Court by dictum changed the presumption in felonious murder which had existed from Coke and Blackstone, and had been reiterated a myriad times by this Court in prior decisions) ; *Bell v. Yellow Cab Co.*, 399 Pa. 332, 343-347, 160 A. 2d 437 (where the Court adopted a test for a new trial which *ignored 23 prior decisions* of this Court which had established an entirely different standard) ; *Bilbar Construction Company v. Easttown Township Board of Adjustment*, 393 Pa. 62, 77, 78, 141 A. 2d 851 (where the Court established a new and different standard for zoning and repudiated and by necessary implication overruled a myriad prior decisions of this Court).

The words of the learned Justice OWEN J. ROBERTS, in *Smith v. Allwright*, 321 U.S. 649, at page 669, are apt: "The reason for my concern is that the instant decision, overruling that announced about nine years ago, tends to bring adjudications of this tribunal into the same class as a restricted railroad ticket, good for this day and train only. I have no assurance, in view of current decisions, that the opinion announced today may not shortly be repudiated and overruled by justices who deem they have new light on the subject."

The present case does not contain any facts or circumstances which bring it within or would justify an exception to the general principle of stare decisis.

For these reasons, I very strongly dissent.

---

DISSENTING OPINION BY MR. JUSTICE JONES:

We are now asked to declare invalid the Fair Trade Act. The reasons assigned are economic in nature. Appeal for invalidation of this statute on such grounds should be addressed to the legislature, not this court.

I believe that the rationale of *Burche Co. v. General Electric Co.*, 382 Pa. 370, 115 A. 2d 361, is sound and that *Burche* controls the case at bar.