The FRIENDLY HOME, INC.

v.

The SHAREHOLDERS AND CREDI-
TORS OF ROYAL HOMESTEAD
LAND CO. et al.

No. 81–342–Appeal.

Supreme Court of Rhode Island.

May 24, 1984.

Mark L. Smith, Woonsocket, for plaintiff.

Vincent A. DeCesare, North Providence, for defendant.

OPINION

SHEA, Justice.

This is an appeal from the denial of an amended motion to vacate a default judg-

ment entered in an action to quiet title to a parcel of land located in the city of Woonsocket. We reverse.

The plaintiff is The Friendly Home, Inc. The defendants are the shareholders and creditors of two defunct corporations, Statewide Environmental Development Corp. and Rural Conservation Association, Inc. The defunct corporations were assignees of 60 percent of the stock of another defendant, Royal Homestead Land Company, likewise defunct. Royal Homestead held a right of redemption in the property to which Friendly Home was quieting title. A default judgment was entered when defendants failed to plead or otherwise defend against the petition to quiet title as required by law. The defendants subsequently filed a motion to vacate the judgment pursuant to Rule 60(b)(3) of the Superior Court Rules of Civil Procedure. After a hearing, the trial justice denied the motion to vacate. The defendants now appeal.

I

Friendly Home filed a complaint on January 25, 1980, against the shareholders and creditors of Royal Homestead [1] and against the unknown shareholders and creditors of Statewide and Rural, to quiet title to a parcel of land (herein referred to as lot 13) located in the city of Woonsocket. Title to lot 13 had been assigned to plaintiff by instrument of tax title by the Woonsocket City Treasurer and was duly recorded.

The plaintiff's complaint further sought an order authorizing notice by publication to any unknown defendants and other unknown and unascertained persons who may have been interested in lot 13 and whose whereabouts were unknown.[2] Publication was to be made once a week for two successive weeks in the *Woonsocket Call,* a newspaper published daily in Woonsocket. Additionally, an order was sought authorizing certain Royal Homestead nonresident stockholders to be notified by mail and other defendants by personal service.[3]

The plaintiff stated in its complaint that the shareholders and creditors of Statewide and Rural were unknown. Ryan, plaintiff's president, signed the complaint and acknowledged under oath that the facts stated therein were true according to the best information and belief of plaintiff. Subsequently, those defendants known to be heirs and trustees of shareholders of Royal Homestead were served with legal process either by mail or by actual delivery. Other defendants, including the shareholders and creditors of Statewide and Rural, were supposedly served by publication of the Order of Notice.

On April 10, 1980, plaintiff filed an application for entry of default and a default judgment supported by an affidavit of failure to plead or otherwise defend on the part of defendants. A judgment of default was entered on April 18, 1980, giving plaintiff title in fee simple to lot 13. The first time defendants learned of this action was when defendant Alan Musumeci drove by lot 13 and saw bulldozers clearing it and workers cutting down all the trees.

On August 7, 1980, defendants, Russell Pascetta and Alan Musumeci, shareholders of Statewide and Rural, filed a motion to vacate judgment under Rule 60(b), together with a supporting affidavit. The motion was later amended to specify Rule 60(b)(3) as the ground for relief. Pascetta and

1. The complaint named individually the heirs of the five original shareholders of defendant Royal Homestead and the trustees of testamentary trusts established by the wills of the former shareholders, totaling twenty-one named individuals or entities whose interests flowed from the stock of Royal Homestead. These persons are not before the court on this appeal.

2. The plaintiff's president, William A. Ryan, testified that his attorney was unable to learn the identities of these defendants because the corporate charters of defendants Statewide and Rural were revoked on March 3, 1978, and February 21, 1978, respectively. These revocations occurred less than two years before the commencement of this action.

3. The plaintiff was able to identify these twenty-one persons, referred to above, even though Royal Homestead's corporate charter was revoked on December 31, 1968.

Musumeci alleged in their motion that they were shareholders of Statewide and Rural, which corporations were assignees of 60 percent of the stock of Royal Homestead.

As grounds for their motion, defendants alleged that plaintiff, through its president, Ryan, intentionally and willfully misrepresented or withheld material facts in its verified complaint. Specifically, they alleged that, contrary to the allegations in the complaint, Ryan personally knew that Pascetta and Musumeci were shareholders in Statewide and Rural. They also alleged in their affidavit that in an earlier suit, commenced in 1976 and entitled *William A. Ryan v. Shareholders and Creditors of Royal Homestead Land Co.*, Superior Court C.A. No. 76–4245, the shareholders of Statewide and Rural, Pascetta and Musumeci, were notified by personal service. They alleged that Ryan met with them on several occasions to settle that suit and did so again on later occasions to discuss the possibility of Statewide's and Rural's conveying by quitclaim deed to Friendly Home their combined redemption rights in lot 13, the land at stake in the present action. It is apparent that their identity was well known to Ryan at the time this action was commenced.

At an evidentiary hearing on defendants' motion to vacate judgment, Musumeci and Pascetta testified that they had been shareholders of Statewide and Rural since their creation in 1974. There was uncontradicted testimony that defendants had dealings with Ryan in 1977 that resulted in the releasing of their rights of redemption on a parcel of land entitled lot 12. Lot 12 is adjacent to lot 13 and is the site of the Friendly Nursing Home, which is owned by plaintiff.

The defendants introduced as an exhibit an agreement signed in 1977 by Pascetta, Musumeci, Ryan, and another individual named Raymond Blanchette to form a corporation for the purpose of purchasing and developing all real estate owned by Statewide and Rural and located in the town of North Smithfield. By agreement, Pascetta and Musumeci were to cause Statewide and Rural to convey this property to the newly formed corporation in exchange for stock. This agreement was terminated by the parties a few months later. Ryan testified that at the time of his signing this agreement, he did not have personal knowledge that Pascetta and Musumeci were shareholders in both Statewide and Rural. When pressed, however, he admitted that they had told him that they were stockholders of these corporations.

Both defendants testified that in 1977 Ryan had wanted to purchase their rights of redemption in lot 13 for his nursing home. They refused to release their rights unless Ryan included them in his plans for the land. Ryan denied ever having discussed the release of rights to lot 13. Later he said that if he had had such discussions, "it was in the interest of expediency." The record does not disclose what Ryan meant by "expediency." He said he never recognized defendants' rights in lot 13, but he did admit dealing with Musumeci and Pascetta in 1977 in order to acquire a quitclaim deed to lot 12.

Ryan testified that when he commenced this suit in 1980, he hired an attorney to discover who were the shareholders of Statewide and Rural. His attorney learned that the charters of these corporations were revoked by the Secretary of State in 1978. The charters were also forfeited to the state tax division later that year. Not only did Ryan fail to tell his attorney that he had known the stockholders of Statewide and Rural, but he also expressly told him that he did not know who the stockholders were.

The trial justice denied defendants' motion to vacate the default judgment on the ground that they had failed to sustain their burden of proving fraud. He held that the corporation laws do not provide for a post-trevocation two-year corporate existence for the purpose of winding up corporate affairs for corporations whose certificates are revoked; such provision is only made for corporations that are dissolved under

the statute. He held that neither State-wide nor Rural was entitled to personal service under the corporation statute, that notice by publication was both effective and adequate. The defendants appeal.

## II

The defendants argue on appeal that the trial justice abused his discretion in denying their motion to vacate a default judgment. This presents us with three distinct issues: (1) whether a defendant corporation whose charter has been revoked, or its agents, officers, or shareholders, is entitled to personal service of a summons and complaint filed within two years of that revocation, under G.L.1956 (1969 Reenactment) § 7-1.1-98 and § 7-1.1-98.1 as enacted by P.L.1970, ch. 136, § 13; (2) whether notice by publication is sufficient notice to a corporation whose charter has been revoked within the preceding two years; and (3) whether the trial justice abused his discretion in finding that defendants had failed to sustain their burden of proving fraud. We limit our discussion to the final issue because that one is dispositive of the case.

The basis for defendants' motion to vacate the judgment was "fraud * * * misrepresentation, or other misconduct of an adverse party." Super.R.Civ.P. 60(b)(3). The motion focused on the statements made by plaintiff through Ryan in its complaint, to the effect that the identity and whereabouts of these defendants were unknown. The defendants claim that they were thus denied notice of the action to quiet title by means of personal service pursuant to G.L.1956 (1969 Reenactment) § 34-16-2, Super.R.Civ.P. 4(d)(3) and §§ 7-1.1-98 and -98.1.

■ The defendants filed their motion to vacate on August 7, 1980, well within the one-year requirement of Rule 60(b). A motion to vacate a default judgment for fraud must be proven by clear and convincing evidence. 11 Wright & Miller, *Federal Practice and Procedure:* Civil § 2860 at 189 (1973); *see* 1 Kent, *R.I.Civ.Prac.* § 60.-13 at 459 (1969). In other words, the truth of such a contention must be highly probable. *Parker v. Parker,* 103 R.I. 435, 442, 238 A.2d 57, 61 (1968); *McCormick's Handbook of the Law of Evidence,* § 340 at 796 (2d ed. Cleary 1972). Such a motion under Rule 60(b)(3) is addressed to the sound discretion of the trial justice. 1 Kent, § 60.1 at 450; *see also Prudential Investment Corp. v. Porcaro,* 115 R.I. 117, 120, 341 A.2d 720, 722 (1975); *Stevens v. Gulf Oil Corp.,* 108 R.I. 209, 210, 274 A.2d 163, 164 (1971).

■ An appeal from an order denying a motion to vacate judgment under Rule 60(b)(3) presents only the correctness of that order and does not raise questions concerning the correctness of the judgment sought to be vacated. 1 Kent, § 60.10 at 457. The trial court's ruling will not be disturbed on appeal absent a showing of an abuse of discretion or an error of law. *Prudential Investment Corp. v. Porcaro,* 115 R.I. at 120, 341 A.2d at 722; *Stevens v. Gulf Oil Corp.,* 108 R.I. at 210, 274 A.2d at 164.

Each defendant resided at the same address in 1980 that he resided at in 1977. Testimony was presented at the hearing, which Ryan corroborated, that the parties met several times during 1977 to settle an earlier suit to acquire defendants' rights of redemption in the adjacent lot 12. Ryan caused both Musumeci and Pascetta to be personally served in that case. Musumeci and Pascetta testified that in 1977 Ryan attempted to purchase from them their rights of redemption in lot 13, the land at issue here. While Ryan disputed this testimony, saying that he had never recognized defendants' rights in lot 13 and that he had never discussed defendants' release of their rights in lot 13, he did allow that if such discussions had occurred, they were just "in the interest of expediency." Ryan admitted having at least four conversations with defendants' attorney concerning the whereabouts of the quitclaim rights to lot 13 that were once held by Luther Coleman, a predecessor in title. However, he insisted that he did not know who held these

quitclaim rights and that Musumeci and Pascetta claimed to hold these rights. He also denied asking defendants' attorney to obtain a quitclaim deed from his clients for the release of their redemption rights. This testimony contradicted the allegations in paragraph twentieth of the complaint wherein plaintiff averred that Luther Coleman conveyed these rights to Statewide and Rural, which conveyance was recorded.

A 1977 agreement between the parties to form a real estate development corporation was introduced as an exhibit. By the terms of that agreement, Pascetta and Musumeci promised Ryan that they would cause Statewide and Rural to transfer certain real estate, not including lot 13, to the newly formed corporation. There was also testimony from Ryan that instead of telling his attorney who the shareholders of Statewide and Rural were, Ryan specifically told him that he did not know who they were. It appears from Ryan's testimony that defendants were not personally served because Statewide and Rural were defunct, not because their identities were unknown. This deliberate lack of candor is a fraud upon the court and therefore must deprive plaintiff of any benefit of the judgment.

■ The shareholders were entitled to notice of this suit because title to the right of redemption in lot 13 passed to them once the charters of these corporations were revoked. Under a general equitable theory commonly known as the "trust fund" doctrine, the property of a dissolved business corporation ultimately passes to its stockholders as the actual owners of such property subject, of course, to the payment of the corporate debts. *DiPrete v. Vallone,* 72 R.I. 137, 141, 48 A.2d 250, 252 (1946); *see also Lake Shore and Michigan Southern Railway Co. v. Smith,* 173 U.S. 684, 698, 19 S.Ct. 565, 570, 43 L.Ed. 858, 864 (1899), *overruled on other grounds, Pennsylvania R. Co. v. Towers,* 245 U.S. 6, 38 S.Ct. 2, 62 L.Ed. 117 (1917); *Jesse A. Bland Co. v. Knox Concrete Products, Inc.,* 207 Tenn. 206, 211–12, 338 S.W.2d 605, 607–08 (1960). This rule applies with equal force when a corporate charter has been revoked by the Secretary of State under the provisions of § 7–1.1–87. Title to an interest in land must come to rest somewhere; it cannot remain in abeyance.

■ The record in this case is very persuasive of the fact that plaintiff knew that Statewide and Rural held a right of redemption in lot 13. It is clear that plaintiff knew that Musumeci and Pascetta were shareholders in these corporations. Ryan's attempt to disclaim this knowledge by hiding behind a razor-thin distinction between having *personal knowledge* that these defendants were shareholders, which he claims he did not have, and merely being *told* that they were shareholders, as he asserts, must fail. Otherwise plaintiff would be allowed to perpetrate a fraud upon the court.

Our review of the record convinces us that the defendants sustained their burden. It is highly probable that the plaintiff intended to misinform the court when it alleged that the identity and whereabouts of these defendants were unknown. We conclude that the trial justice abused his discretion by denying the defendants' motion to vacate the default judgment pursuant to Rule 60(b)(3). The defendants were entitled to notice of this quiet-title action by means of personal service pursuant to §§ 34–16–2 and –10 and Rule 4(d).

The defendants' appeal is sustained. The judgment entered below is reversed, and the papers of the case are remanded to the Superior Court for further proceedings.