238 A.2d 57.
GAIL L. PARKER *vs.* LUCILLE Q. PARKER.

FEBRUARY 14, 1968.

PRESENT: Roberts, C. J., Paolino, Powers, Joslin and Kelleher, JJ.

KELLEHER, J. This is a petition for divorce from bed and board on the ground of gross misbehavior. The respondent is a resident of Charleston, West Virginia. This cause is

before us on her appeal[1] from certain rulings made by the family court in granting the instant petition.

It is respondent's contention that the family court erred (1) in ruling that she was petitioner's common-law wife and (2) in holding that petitioner was a domiciled inhabitant of Rhode Island. Because we believe that petitioner failed to prove that he had a domicile in this state, we deem it unnecessary to determine if the trial justice's finding that a common-law marriage existed between these parties is correct.

The petitioner, Gail L. Parker, has alleged that respondent is his common-law wife. He says her name is Lucille Q. Parker. The respondent denies she is petitioner's spouse. Her name, she claims, is Lucille Q. Kratz. As we chronicle the cross-country travels of the parties, we shall for purposes of clarity and ease of understanding hereafter refer to petitioner as Gail and respondent as Lucille.

Gail is a jockey and during the past 18 years he has traveled extensively throughout this country riding horses at the various racetracks located in many different states. During 1950, while working at a track in California, Gail met Lucille, and on September 7 of that year they were married with appropriate ceremony. Lucille at that time was 15 years of age. Twin daughters were born of this union. Approximately two and one-half years later, Gail filed a petition in the superior court for Maricopa County, Arizona, asking that his marriage to Lucille be annulled. The basis for this action was the failure of Lucille's parents to give their consent to the marriage, Lucille being under the

---

[1]The respondent initiated this appeal by filing a notice of intention to prosecute a bill of exceptions. Since the decision of the family court was entered subsequent to January 10, 1966, respondent acknowledges that the proper procedure for seeking appellate review should have been by way of an appeal. We shall, as we did in *Bouchard* v. *Bouchard,* 102 R. I. 290, 229 A.2d 850, treat the notice of intention as though it had been a claim of appeal filed pursuant to G. L. 1956, §14-1-52, as amended.

legal age of consent in September 1950. On February 11, 1953, the Arizona court entered a decree which annulled the marriage, awarded custody of the twins to Lucille, directed Gail to pay $125 a month for the children's support and, in the event of Lucille's remarriage, this monthly payment was to be reduced to $50.

A few months later, the parties, while still in Arizona, resumed living together. Gail testified in the family court that at this time he and Lucille agreed to become husband and wife and forget the annulment proceedings which he described as a mistake. Although Lucille admitted that she and Gail returned to each other and lived as husband and wife for some 12 years thereafter, she contended that this arrangement was on a trial basis, and if it worked out they would then participate in a marriage ceremony. It was then her understanding that parties were not married until they exchanged connubial vows before some appropriate official.

After leaving Arizona, Gail lived in four other states working at different racetracks. The duration of his stay in each of these states was determined by the length of the meet at each track where he rode. When Gail first came to Rhode Island in 1954 it was to ride at Rhode Island racetracks, and for that purpose he returned here on at least five or six other occasions. Each of his visits to Rhode Island lasted for varying periods of time depending on the racing schedule in this state. Gail testified that in 1954, while he and Lucille were here, they lived in a trailer near a racetrack and at that time, after discussing the nature of their relationship, agreed that they were husband and wife. It is Gail's position that Lucille's and his relationship at that moment ripened into a common-law marriage. Lucille, on the other hand, maintained throughout the proceedings in the family court that she and Gail never became common-law spouses since she at no time had the requisite intent to be married.

In 1961 a son, Gail L. Parker, Jr., was born of the parties in Jefferson County, West Virginia. Although the children attended school in Rhode Island in the spring of 1962 for a period slightly in excess of 30 days, they also attended schools in various sections of the country. The record shows that in the last years of the parties' association, Lucille and the children remained in West Virginia while Gail was away working beyond the borders of that state.

Gail testified that in 1964, while in Rhode Island, he sustained a foot injury which forced a curtailment of his racing engagements and he returned "home" to West Virginia where he remained with Lucille and the children. Frustration and disagreements then began to develop. On September 7, 1964, Gail appeared before a justice of the peace in West Virginia on a complaint filed by Lucille wherein she alleged that he had threatened her with bodily harm. On January 15, 1965, Gail was again before the court to answer to the charge that he had assaulted Lucille. Each time he posted a bond to keep the peace and was released. At one point in his testimony, Gail admitted that he told the West Virginia court that Lucille was not his wife.

In early 1965, Gail arrived in Rhode Island and rented a one-bedroom apartment in Pawtucket. Lincoln Downs Racetrack was about to open for its season and the jockeys were assembling preparatory to the first days of racing. According to Gail's employer, racing started that year at Lincoln Downs in February and continued on until May or June.

In March 1965, Lucille travelled alone from West Virginia to Rhode Island and spent two days and nights at Gail's apartment. On the third day she left this state and returned to West Virginia. On March 27, 1965, she and one Frederick Kratz were married by a minister in Maryland and thereafter returned to West Virginia where they took up residence with the children. On April 3, 1965, six

days after Lucille's purported nuptials, Gail filed the instant petition in the family court alleging as gross misbehavior Lucille's conceded cohabitation with her new "husband," Frederick Kratz. Sometime later Gail moved from his apartment in Pawtucket to Providence where he occupied a room in a house inhabited by the parents of his employer.

The state is an interested party in maintaining the regularity of divorce proceedings. *Carvalho* v. *Carvalho*, 97 R. I. 132, 196 A.2d 164; *Puhacz* v. *Puhacz*, 55 R. I. 306, 180 A. 377. The family court may award a divorce from bed, board and future cohabitation for certain causes "* * * provided, the petitioner shall be a domiciled inhabitant of this state and shall have resided in this state such length of time as to the court in its discretion shall seem to warrant the exercise of the powers in this section conferred." G. L. 1956, §15-5-9.

Jurisdiction of the family court to grant a divorce is created and defined by the legislature. The general assembly has given the family court jurisdiction of divorce from bed and board only when the petitioner is a domiciled inhabitant of this state prior to and at the time of the filing of the petition. *Walker* v. *Walker*, 32 R. I. 28, 78 A. 339. In *McCarthy* v. *McCarthy*, 45 R. I. 367, 122 A. 529, this court declared that in order for a person to establish a domicile and become a domiciled inhabitant of Rhode Island, there must be an actual abode in this state with the intention in good faith to live here permanently and without any present intention of changing the home in the future. Actual residence, we said, unaccompanied by such an intention does not suffice. The intention therefore of the person seeking to establish a domicile is an essential element which must be proven.

As the real intention of a person seeking to establish the existence of a domicile is known only to him, any state-

ments he makes, particularly as in the case at bar, are not controlling but the truth of his assertions are to be determined by the court upon the consideration of all the evidence. We held in *Gourlay* v. *Gourlay*, 15 R. I. 572, 10 A. 592, that mere affirmations of intent by a petitioner to make Rhode Island his domicile standing alone and unevidenced by any objective manifestations of his professed intent were entitled to little or no weight.

In our expression for the state's concern in matters of divorce together with the consequent ramifications which it is likely to have on the lives and property rights of others, we have required a petitioner in divorce proceedings to prove by clear and convincing evidence the guilt which he imputes to the respondent spouse and the freedom from fault which the petitioner attributes to himself. *Browning* v. *Browning*, 89 R. I. 415, 153 A.2d 146; *Lannon* v. *Lannon*, 86 R. I. 451, 136 A.2d 608. Long ago in *Macomber* v. *Macomber*, 35 R. I. 372, 87 A. 170, we declared the same degree of proof must be satisfied by a petitioner seeking a divorce from bed and board as that which is necessary to obtain an absolute divorce.

There are, therefore, three essential elements which must be proven in any petition for divorce from bed and board— namely, that petitioner is a domiciled inhabitant of Rhode Island, that his spouse is guilty of some conduct warranting the relief asked for and that his conduct is free of any blame which would preclude the granting of the requested relief. As to all three elements, petitioner is confronted with the same required degree of proof—"clear and convincing evidence"; as to the first element, petitioner must establish by clear and convincing evidence that he is a domiciliary of Rhode Island before the family court can exercise jurisdiction. Because of our awareness of the delicate nature of the marital status and its fundamental importance to any civilized society, a higher degree of proof is required from

a petitioner who institutes divorce proceedings than from a plaintiff in an ordinary civil action.

The phrase "clear and convincing evidence" is more than a mere exercise in semantics. It is a degree of proof different from a satisfaction by a "preponderance of the evidence" which is the recognized burden in civil actions and from proof "beyond a reasonable doubt" which is the required burden in criminal suits. If we could erect a graduated scale which measured the comparative degrees of proof, the "preponderance" burden would be at the lowest extreme of our scale; "beyond a reasonable doubt" would be situated at the highest point; and somewhere in between the two extremes would be "clear and convincing evidence."

To verbalize the distinction between the differing degrees more precisely, proof by a "preponderance of the evidence" means that a jury must believe that the facts asserted by the proponent are more probably true than false; proof "beyond a reasonable doubt" means the facts asserted by the prosecution are almost certainly true; and proof by "clear and convincing evidence" means that the jury must believe that the truth of the facts asserted by the proponent is highly probable. *Cook* v. *Michael,* 214 Or. 513, 330 P.2d 1026.

One of the more articulate and descriptive definitions of clear and convincing evidence appears in the following portion of an approved instruction to a jury given in *Aetna Insurance Co.* v. *Paddock,* 5 Cir., 301 F.2d 807, 811:

"'* * * it must be shown by clear and convincing evidence, and by that term is meant the witnesses to a fact must be found to be credible and that the facts to which they have testified are distinctly remembered and the details thereof narrated exactly and in due order and that the testimony be clear, direct and weighty and convincing, so as to enable you to come to a clear conviction without hesitancy of the truth of the precise facts in issue.'"

We must now review the testimony submitted by Gail relative to the issue of whether or not he had established the requisite domiciliary in Rhode Island by clear and convincing evidence.

Since it is clear that Gail actually lived in Rhode Island at the time the instant petition was filed, the only question before us is whether he had the necessary intention to establish a domiciliary here. The trial justice found that he had, and based his decision on the following two points of evidence: first, that Gail received mail at a Rhode Island address; second, that Gail owned a car registered in Rhode Island. The trial justice further pointed out in his decision that since everyone must have a legal domicile and since Gail had lived a nomadic life without long attachment to any one place, he found Gail to be a domiciliary of Rhode Island.

We cannot accept the evidence relied on by the trial justice and adduced by Gail as being of such persuasive force as to meet the standards of clear and convincing evidence. We cannot say that Gail's affirmations as to his intent to make Rhode Island his permanent home were sufficiently manifested by the presentation of this evidence as to warrant an exercise of jurisdiction by the family court. In our opinion it falls far short of being such evidence which is so direct, weighty and convincing as to lead one to the firm conviction that the truth of the proposition sought to be proved is highly probable.

The fact that Gail owned a car registered in Rhode Island is not very cogent evidence in support of his claimed intent to live in this state permanently—especially when the record discloses that the car was registered not by Gail, but by his employer; and not to Gail's address but to that of his employer's business. The fact that Gail received letters at his Pawtucket address is even less compelling or persuasive when there is no evidence in the record as to how many

letters he received or as to who sent them. For all we know, Gail could have sent the letters himself. As for the trial justice's comment that Gail was a nomad and needed a domicile, all we can say is that Gail surely must have a legal domicile, but on the state of the present record, he has not established one in Rhode Island by clear and convincing evidence.

Domicile is a legal concept, and much significance is attached to it in divorce proceedings. It is not to be treated lightly—for to do so would lay open our family court to exercise jurisdiction in cases filed here by the most dubious and duplicitous petitioners who roam this country seeking convenient and suitable forums which will resolve their marital difficulties.

It is clear under *Walker* v. *Walker, supra,* we require that a petitioner for divorce from bed and board be a domiciled inhabitant of this state at the time he files his petition. Although he is permitted to show evidence up to the date of the trial which proves his domicile is Rhode Island, he still must convince the trier of fact by clear and convincing evidence that his relationship to this state is of such significance as to classify him as a domiciliary. The only limits on the kinds and amount of probative evidence which a petitioner may introduce to prove he is a bona fide domiciled inhabitant of Rhode Island are the ingenuity, diligence and perseverance of either the petitioner or his counsel.

We are mindful that the question of the establishment of a legal domicile is one of fact. *Nevin* v. *Nevin,* 88 R. I. 426, 149 A.2d 722; *Fosdick* v. *Fosdick,* 15 R. I. 130, 23 A. 140. We are also aware of our oft-cited rule that a trial justice's findings shall not be disturbed unless they are clearly wrong or fail to do justice between the parties. Here the family court's finding as to Gail's Rhode Island domicile, not being bottomed on clear and convincing evidence, is clearly wrong; in our opinion, therefore, the court erred when it denied Lucille's motion to dismiss the petition.

The respondent's appeal is sustained, the trial justice's decision is reversed; and the cause is remanded to the family court with direction to dismiss the petition for divorce for lack of jurisdiction.

*Max Levin,* for petitioner.

*Ernest L. Shein,* for respondent.