Steven L. HENDERSON

v.

Angela C. HENDERSON.

Steven L. Henderson

v.

Angela C. Henderson.

Nos. 2001–608–APPEAL, 2001–544–M.P.

Supreme Court of Rhode Island.

March 11, 2003.

Paul A. Fontaine, for Plaintiff.

Gregory A. Carrara, Providence, for Defendant.

Present: WILLIAMS, C.J., FLANDERS, and GOLDBERG, JJ.

## OPINION

PER CURIAM.

In this matter, Angela C. Henderson (defendant) contends that the Family Court motion justice erred in denying her motion to dismiss Steven L. Henderson's (plaintiff) complaint praying for a divorce from bed and board. Specifically, the defendant alleges that the motion justice should not have determined that Rhode Island had jurisdiction to determine placement, custody and support of the parties' children. In this case we address bed and board divorce and custody of the children. We do not address whether there is personal jurisdiction to award child support or other affirmative relief.

The following background details the confusing manner in which this matter came before this Court. The defendant timely filed a notice of appeal with this Court on November 6, 2001. Subsequently, on November 9, 2001, defendant filed a petition for a writ of certiorari with this Court, causing a separate appellate case file to be opened. The defendant did not withdraw her notice of appeal, but rather attended a pre-briefing conference in which this Court directed the parties to appear and show cause why the issues raised by defendant's appeal should not summarily be decided.[1] On October 10, 2002, this Court granted defendant's petition for a writ of certiorari and consolidated that petition with her appeal. Because we are asked to review an interlocutory order in this matter, we deny and dismiss defendant's appeal and proceed to the merits of this case only by way of defendant's petition for writ of certiorari.[2]

---

1. The respective counsel for each of the parties further compounded this confusion because neither was prepared to (1) affirmatively answer how this matter came before the Court, or (2) produce either the petition for certiorari or the order granting that petition. In the future, counsel should be more prepared to adequately address procedural and substantive questions to aid this Court, and more importantly, their clients.

2. The plaintiff did not raise the fact that the motion justice's order was interlocutory. Nevertheless, this Court may raise the issue of the interlocutory nature of this appeal *sua sponte* and act accordingly. *See Maloney v.*

*Daley*, 115 R.I. 375, 376, 346 A.2d 120, 121 (1975) (per curiam). This Court "will entertain a direct appeal only from a final judgment." *Martino v. Ronci*, 667 A.2d 287, 288 (R.I.1995). Similarly, G.L.1956 § 14–1–52(a), states that a party may appeal "[f]rom any final decree, judgment, order, decision, or verdict of the family court * * *." There are, however, certain exceptions to the rule that a decision must be final in order to appeal. This Court will grant review "when the case falls within previously enunciated exceptions to [the] rule, such as the legislatively created exception that allows a party to appeal the granting of injunctive relief." *In re Joseph J.,*

## I

### Facts and Travel

The plaintiff and defendant were married in Colorado on or about August 16, 1985,[3] and made their marital domicile in the state of Missouri. On February 21, 1986, the couple welcomed their first child, Crystal Dawn, followed two years later by the birth of Pamela Rene on April 14, 1988. Stephen Craig, the couple's youngest child, was born on October 16, 1993. In June 2000, plaintiff and defendant separated because of irreconcilable differences that led to the breakdown of their marriage. The plaintiff moved to Rhode Island in October 2000, and his young son, Stephen, joined him in December 2000. In March 2001, Pamela also came to Rhode Island to live with her father.

On May 31, 2001, plaintiff filed a complaint in Family Court for divorce from bed and board. On July 20, 2001, defendant responded by filing a motion to dismiss plaintiff's complaint for lack of jurisdiction. On July 30, 2001, in a motion for temporary orders, plaintiff further requested (1) sole custody of Pamela and Stephen, (2) exclusive use of the marital domicile and furniture therein, and (3) an equitable distribution of the marital assets. On October 12, 2001, a Family Court justice held a hearing on the parties' motions. In an order dated October 22, 2001, the motion justice denied defendant's motion to dismiss for lack of jurisdiction and ordered that the current placement of the children remain in effect until further order of the Family Court. The defendant then began the above-described process of appealing that order.

The defendant argues in this case that (1) Rhode Island does not have jurisdiction to hear plaintiff's complaint for a divorce from bed and board (legal separation), (2) the possibility of reconciliation is a prerequisite for granting a divorce from bed and board, (3) granting a divorce from bed and board prevents her from filing for an absolute divorce in her home state of Missouri, and (4) Rhode Island cannot decide custody matters concerning the parties' children because it does not have personal jurisdiction over defendant. We disagree on all claims.

## II

### Jurisdiction over Divorce from Bed and Board

An analysis of the origin and legal basis of the statutory authority to grant bed and board divorces demonstrates that defendant's assertion that Rhode Island does not have jurisdiction over this matter is incorrect.

The practice of granting divorces from bed and board originated in the English ecclesiastical courts, where it was known by the Latin term *mensa et thoro*. *See Hamel v. Hamel*, 426 A.2d 259, 260 (R.I.1981). This limited divorce was effectively a legal separation—it "authorized husband and wife to live apart but did not

465 A.2d 150, 151 (R.I.1983) (citing § 14–1–52; G.L.1956 § 9–24–7). "Another exception, judicial in origin, permits a review of a decree which, although in a strict sense interlocutory, has such an element of finality that we will act before the case has finally terminated in order to prevent possible injurious consequences." *Id.* (citing *Redfern v. Church of the Mediator*, 101 R.I. 182, 185, 221 A.2d 453, 455 (1966)). This Court will review such interlocutory orders, however, only when the petitioner has filed a petition for a writ of certiorari in accordance with Article I, Rule 13 of the Supreme Court Rules of Appellate Procedure. *See Pier House Inn, Inc. v. 421 Corporation, Inc.*, 689 A.2d 1069, 1070 (R.I. 1997) (mem.).

**3.** The exact date of the marriage is absent from the record.

free them from the marital bond." *Id.* The divorce from bed and board, while existing at common law in this state, was not enacted in statutory form in Rhode Island until 1896 (G.L.1896, ch. 195, § 8). *See Hamel,* 426 A.2d at 261. That statute provided in part that "[d]ivorces from bed, board and future cohabitation, until the parties be reconciled, may be granted for any of the causes for which by law a divorce from the bond of marriage may be decreed, and for such other causes as may seem to require the same." G.L. 1896, ch. 195, § 8. The general laws at that time also provided that "[n]o petition for divorce shall be granted unless the petitioner shall, at the time of preferring such petition, be a domiciled inhabitant of this state * * *." *Id.* at § 10. While this language, standing alone, did not clarify whether the jurisdictional requirement was the same for both absolute divorces and divorces from bed and board, this Court held in *Crow v. Crow,* 41 R.I. 258, 260–63, 103 A. 739, 740–41 (1918), that the jurisdiction requirement in G.L. 1896, ch. 195, § 10 applied to both absolute divorces and divorces from bed and board. Thus, jurisdiction of Rhode Island courts in cases of divorce, whether an absolute divorce or a divorce from bed and board, depended solely on the residence of the petitioner. *See Crow,* 41 R.I. at 261, 103 A. at 741.

Since our decision in *Crow,* the divorce from bed and board statute has been amended several times. The jurisdictional requirement, however, remains the same. The statute provides, in relevant part:

"Divorces from bed, board, and future cohabitation, until the parties are reconciled, may be granted for any of the causes for which by law a divorce from the bond of marriage may be decreed, and for other causes which may seem to require a divorce from bed and board; provided, the petitioner is a domiciled inhabitant of this state and has resided in this state for a length of time that the court in its discretion seems to warrant the exercise of the conferred powers in this section." G.L.1956 § 15–5–9.

The motion justice in the case at bar interpreted § 15–5–9 to only require the petitioner to be domiciled in Rhode Island for the purposes of granting a divorce from bed and board. The defendant argues, however, that this interpretation was incorrect and that jurisdiction is proper only in Missouri.

■■■ "This Court reviews *de novo* questions of statutory interpretation." *Pier House Inn, Inc. v. 421 Corporation, Inc.,* 812 A.2d 799, 804 (R.I.2002). When a question is a matter of statutory construction, the reviewing court first must look to the plain and ordinary meaning of the statutory language. *See Fleet National Bank v. Clark,* 714 A.2d 1172, 1177 (R.I. 1998). " 'If the language is clear on its face, then the plain meaning of the statute must be given effect' and this Court should not look elsewhere to discern the legislative intent." *Id.* (quoting *Gilbane Co. v. Poulas,* 576 A.2d 1195, 1196 (R.I.1990)).

The jurisdictional requirement in § 15–5–9 is quite clear in that the only requirement for exercising jurisdiction over a divorce from bed and board is that the petitioner be domiciled in Rhode Island. Furthermore, because the jurisdictional requirement has remained the same since our interpretation in *Crow,* we see no reason to disagree with the decision of our brethren in that case—that jurisdiction depends solely on the domicile of the petitioner. *See Crow,* 41 R.I. at 261, 103 A. at 741. Therefore, as long as the motion justice, in his discretion, determined that plaintiff has resided in Rhode Island for a sufficient amount of time to warrant the exercise of powers in § 15–5–9, this Court will not disturb that finding unless it is

"clearly wrong or fail[s] to do justice between the parties." *Parker v. Parker,* 103 R.I. 435, 444, 238 A.2d 57, 62 (1968).

In this case, the motion justice determined that plaintiff had resided in Rhode Island for close to a year before bringing this action and thus, should be able to petition the Family Court to make determinations about his marital status. This finding does not seem to be clearly wrong nor does it fail to do justice. Accordingly, we uphold the motion justice's determination that Rhode Island has jurisdiction over this petition for a divorce from bed and board.

▇▇▇▇▇ The defendant also argues, however, that such an exercise of jurisdiction would violate her due process rights because she does not have sufficient minimum contacts with Rhode Island as is required by *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), and Rhode Island's long arm statute, G.L.1956 § 9–5–33. The defendant, however, fails to recognize that jurisdiction over divorce is considered *quasi in rem, see Ditson v. Ditson,* 4 R.I. 87, 101–09 (1856), and is grounded in the rationale that states have the power, consistent with the due process clause, to exercise jurisdiction over cases concerning the legal status of its citizens, regardless of whether the other spouse has sufficient minimum contacts with the forum state. *See Estin v. Estin,* 334 U.S. 541, 544, 68 S.Ct. 1213, 1216, 92 L.Ed. 1561, 1566 (1948); *Williams v. North Carolina,* 317 U.S. 287, 298–99, 63 S.Ct. 207, 213, 87 L.Ed. 279, 286 (1942); *Maynard v. Hill,* 125 U.S. 190, 209, 8 S.Ct. 723, 728, 31 L.Ed. 654, 658 (1888); *Pennoyer v. Neff,* 95 U.S. 714, 734–35, 24 L.Ed. 565, 573 (1877).[4] Therefore, because this petition for a divorce from bed and board clearly relates to plaintiff's marital and parental status, it is constitutionally proper for Rhode Island to exercise jurisdiction over defendant, despite her lack of minimum contacts with Rhode Island.

## III

### Reconciliation of Parties

▇▇▇▇▇ The defendant further asserts that plaintiff should not be able to petition for a divorce from bed and board because the parties had no intent of reconciling, thereby allowing plaintiff to avoid the time requirements necessary to file for an absolute divorce and consequently contravene the intent of the General Assembly. We disagree with defendant. The potential for reconciliation is not a prerequisite to obtain a legal separation. *See Hamel,* 426 A.2d at 261. This Court specifically has noted "that in the marital context there may be occasions when a difference thought to be irreconcilable at one time may later be resolved. This is one reason why a spouse should be given the option of deciding whether to seek an absolute divorce or a bed-and-board divorce." *Id.* Regardless of plaintiff's or defendant's intent at the filing of the petition, this Court "believe[s] that the General Assembly has given the marriage partners an option of seeking an absolute divorce or a legal separation based upon the irreconcilable-dif-

---

4. In *Shaffer v. Heitner,* 433 U.S. 186, 208, 97 S.Ct. 2569, 2582, 53 L.Ed.2d 683, 700 (1977), the Supreme Court held that in cases of jurisdiction *in rem* or *quasi in rem,* mere presence of the *res* was no longer sufficient to confer courts with jurisdiction over an out-of-state litigant. Rather, all assertions of state-court jurisdiction must be evaluated according to the minimum contacts test enunciated by the Court in *International Shoe. See id.* at 212, 97 S.Ct. at 2584, 53 L.Ed.2d at 703. The Court left intact, however, the doctrine that allows a state to exercise jurisdiction over matters relating to the status of its citizens regardless of minimum contacts. *See id.* at 212 n. 30, 97 S.Ct. at 2582 n. 30, 53 L.Ed.2d at 700 n. 30.

ferences ground." *Id.* at 262. Therefore, plaintiff has not contravened the legislative intent by petitioning for a divorce from bed and board, despite the parties' current belief that reconciliation is improbable.

## IV

### Filing for Absolute Divorce in Missouri

The defendant's assertion that she is prevented from seeking an absolute divorce in Missouri while plaintiff's complaint for a divorce from bed and board is pending in Rhode Island, is likewise wrong. "[T]he pendency of a divorce petition in Rhode Island does not preclude one of the parties from instituting another divorce action in a foreign state." *Boyls v. Boyls,* 463 A.2d 1307, 1309 (R.I.1983). In fact, a "valid foreign ex parte divorce divests the Family Court of jurisdiction over a Rhode Island divorce petition pending at the time the foreign divorce is entered." *Id.* Therefore, there is no legal authority in Rhode Island preventing defendant from filing for an absolute divorce in Missouri. Furthermore, defendant has, in fact, filed for an absolute divorce in Missouri and that action is now pending.

## V

### Jurisdiction over the Children

The defendant next argues that the Family Court does not have jurisdiction over the children of the marriage. The defendant is again incorrect. Rhode Island has adopted the Uniform Child Custody Jurisdiction Act, G.L.1956 chapter 14 of title 15 (UCCJA) "for the avowed purpose of avoiding jurisdictional competition and conflict with courts of other states in matters of child custody." *Pratt v. Pratt,* 431 A.2d 405, 408 (R.I.1981). Moreover, as is the case in divorce proceedings in which courts exercise jurisdiction over the status of its citizens via *quasi in rem* jurisdiction,

a state's power to decide a custody matter does not depend on its having personal jurisdiction over the parties, but rather depends on its ability to adjudicate matters concerning the status of its citizens through *quasi in rem* jurisdiction. *See id.* at 409. Thus, Rhode Island properly has jurisdiction in the Family Court to make a child custody determination affecting both parties to the marriage when "[t]he state of Rhode Island * * * [i]s the home state of the child at the time of commencement of the proceeding * * *." Section 15–14–4(a)(1)(i).

In this case, both children were living in Rhode Island with the plaintiff at the time the proceedings below began. There is no indication that they would be leaving Rhode Island absent a court order requiring plaintiff to return the children to defendant in Missouri. Rhode Island is, for all intents and purposes, their home state. Therefore, the motion justice correctly decided that Rhode Island could exercise jurisdiction over the custody matter concerning the two children.

### Conclusion

For the foregoing reasons, the appeal is denied and dismissed, the petition for certiorari is denied, and the writ previously issued is quashed. The papers in the case may be returned to the Family Court with our decision duly endorsed thereon.