In re JERMAINE H. et al.

No. 2010–52–Appeal.

Supreme Court of Rhode Island.

Dec. 13, 2010.

Thomas J. Corrigan Jr., Esq., Department of Children, Youth & Families, for DCYF.

Andrew J. Johnson, Esq., Court Appointed Special Advocate, for CASA.

Catherine Gibran, Office of the Public Defender, for Respondent.

Present: SUTTELL, C.J., GOLDBERG, FLAHERTY, ROBINSON, and INDEGLIA, JJ.

## OPINION

Justice GOLDBERG, for the Court.

This case came before the Supreme Court on September 30, 2010, pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not summarily be decided. The respondent, Jermaine Haney (Haney or respondent) appealed from the Family Court's decision in favor of the Department of Children, Youth and Families (DCYF) that declared that his children were neglected and dependent as to him. After reviewing the memoranda submitted by the parties and the arguments of counsel, we are satisfied that cause has not been shown. Accordingly, we shall decide this case without further briefing or argument. We affirm.

### Facts and Travel

In December 2008, DCYF removed Haney's four minor children from the home he shared with the mother of his children, Teresa Allen (Allen). The DCYF became involved in this matter after receiving a phone call from a hospital emergency room that Allen had arrived at the hospital highly intoxicated. Two days later, DCYF filed a neglect petition against Haney and Allen, which later was amended to include dependency.[1] In February 2009, the Family Court held a probable-cause hearing in accordance with G.L.1956 § 40–11–7.1. The Family Court trial justice found probable

---

1. As of this writing, the record reflects that Allen has admitted the allegations of dependency and is cooperating with DCYF.

cause to support the removal, concluding there was "overwhelming evidence to support the [s]tate's showing of probable cause in this case[,]" and she declared that her "finding of facts [were] by clear and convincing evidence." Although finding that the physical examinations of the children indicated that there was no evidence of physical abuse, the trial justice noted that "[i]f we waited for each child to be physically abused or harmed, then we would not, 'we,' the State of Rhode Island, the Court and the Department would not be protecting children who are vulnerable." She also stated that she did not find Haney a credible witness.

In April 2009, Haney filed a motion seeking the trial justice's recusal from the forthcoming trial, based on his contentions that her findings had gone "beyond what's required under the standard[;]" that it was improper for the Family Court to associate itself with DCYF; and that her finding that Haney was not a credible witness suggested bias. Haney alleges that these led to "an appearance of partiality based on evidence adduced at [the] hearing[.]"

The trial justice acknowledged that she was "very well aware" that the standard of proof was not by clear and convincing evidence to support a finding of probable cause; but she said that in light of the testimony and evidence presented to her she had characterized the proof as such. The trial justice declared:

"It's a case involving domestic violence, substance abuse and four young children, which certainly, given the facts, posed risk of harm to the child[ren] at that time. Now, I don't know if circumstances of the case have changed. I don't even know if the parents are living together. * * * That may certainly change the circumstances in the case."

At the ensuing trial, the trial justice heard testimony from Megan Dunn (Dunn), a DCYF child protective investigator and David Hurdis (Hurdis), the social caseworker assigned to the case, as well as the mother. Dunn testified that she went to Haney's home on December 14, 2008, at approximately 4 in the afternoon, and observed that he had bloodshot eyes. She testified that Haney told her that he had just awakened and was unaware of Allen's whereabouts. Dunn testified that based on his appearance, she was satisfied Haney was under the influence of drugs or alcohol. In examining the living conditions, she observed sparse furnishings, a child wrapped in a blanket and sleeping on the floor, children dressed inappropriately for the winter months and a limited amount of food in the home. Dunn testified that two of the children told her that Haney and Allen fought all the time and the five-year old disclosed that she was scared when she saw her parents fight. The oldest child, who was nine years old, told Dunn that he watched his siblings while his father slept. Dunn testified that she placed a forty-eight hour hold on the children based on domestic violence, substance abuse and because the children were left unsupervised by a responsible adult.

Hurdis testified that during a supervised visit with the children, in January 2009, Allen had a welt under her eye. Then, at a visit in April 2009, both Allen and Haney were wearing sunglasses. When Hurdis asked Allen to remove her sunglasses, she refused; however, he noted that she had a black eye. Although Allen later testified that neither instance was caused by domestic violence, she acknowledged that when she and Haney fought, it sometimes involved throwing things. She also admitted that the police had been called for a domestic dispute and that a no-contact order subsequently was issued against Haney. Allen also admitted that she was "very intoxicated" on December 14, 2008,

the day the children were removed from the home.

At the close of the trial, the trial justice found by clear and convincing evidence that the children were neglected[2] and dependent[3] as to Haney and ordered the children to be committed to the care, custody and control of DCYF until further order of the Family Court. Specifically, she found that the children were left unsupervised when the mother was intoxicated and the father was sleeping, that the mother's testimony denying any domestic violence was without credibility and that the children were at serious risk of harm.

The respondent filed this appeal, alleging that the trial justice erred by failing to recuse herself and in finding neglect and dependency based on the evidence in this case.

## Analysis

### A. Recusal

▮ This Court has held on numerous occasions that "a party alleging judicial bias carries a substantial burden of proof to show that the asserted prejudice impaired the fairness of the trial." *In re Shawn B.*, 864 A.2d 621, 624 (R.I.2005) (citing *In re Michael T.*, 796 A.2d 473, 474 (R.I.2002) (mem.)). The respondent must establish that the trial justice had personal bias or prejudice by reason of a preconceived or settled opinion of a character

calculated to impair his impartiality seriously and to sway his judgment. *In re Damien M.*, 819 A.2d 213, 213 (R.I.2003) (mem.) (citing *Olivieri v. Olivieri*, 760 A.2d 1246, 1252 (R.I.2000) and *Cavanagh v. Cavanagh*, 118 R.I. 608, 621–22, 375 A.2d 911, 917–18 (1977)). To prevail on a recusal motion based on bias, a party must show that there are facts present such that it would be "reasonable for members of the public or a litigant or counsel to question the trial justice's impartiality." *In re Antonio*, 612 A.2d 650, 653 (R.I.1992) (quoting *State v. Clark*, 423 A.2d 1151, 1158 (R.I.1981)).

Based on our careful review of the record, we are satisfied that respondent has not met this burden. Haney argues that because the trial justice found evidence of neglect at the probable-cause hearing by a higher standard of proof than was required and also declared that respondent's testimony was not credible, she had prejudged the merits of the case. We reject this contention. The record discloses that the trial justice anticipated that the trial would include the presentation of more evidence, including testimony relative to any changed circumstances in the family. We do not deem her findings or credibility determinations to indicate bias. We are thus satisfied that respondent has failed to show that the trial justice was prejudiced against him such that reasonable people

2. General Laws 1956 § 14–1–3(8) defines "neglect" as relating to "a child who requires the protection and assistance of the court when his or her physical or mental health or welfare is harmed or threatened with harm when the parents or guardian: (i) [f]ails to supply the child with adequate food, clothing, shelter or medical care, though financially able to do so or offered financial or other reasonable means to do so; (ii) [f]ails to provide the child proper education as required by law; or (iii) [a]bandons and/or deserts the child."

3. Section 14–1–3(6) defines "dependent" as relating to "any child who requires the protection and assistance of the court when his or her physical or mental health or welfare is harmed or threatened with harm due to the inability of the parent or guardian, through no fault of the parent or guardian, to provide the child with a minimum degree of care or proper supervision because of" death/illness of a parent or because of special "needs of the child that the parent is unable to provide."

would question this justice's impartiality during the subsequent trial.

The respondent also argues that in making her findings, it was improper for the trial justice to associate herself with DCYF. This argument is without merit. The Family Court Act specifically sets forth that the purpose of the Family Court is to strike a balance between the child's welfare, the best interests of the state, and when possible, the conservation and strengthening of family ties. G.L.1956 § 14–1–2. The fact that the trial justice iterated this function is not evidence of bias in favor of DCYF or against respondent.

### B. Dependency and Neglect

■■■ In passing on allegations of dependency and neglect, the Family Court is required to make its findings by clear and convincing evidence, in accordance with Rule 17(b) of the Family Court Rules of Juvenile Proceedings. The clear and convincing standard of proof requires the trial justice to have a "clear conviction without hesitancy of the truth of the precise facts in issue." *In re Adner G.*, 925 A.2d 951, 957 (R.I.2007) (quoting *Parker v. Parker*, 103 R.I. 435, 442, 238 A.2d 57, 61 (1968)). This Court's standard of review requires that "we examine the record to determine whether legally competent evidence exists in it to support findings made by the trial justice." *Id.* (quoting *In re Mackenzie C.*, 877 A.2d 674, 685 (R.I.2005)). Further, the trial justice's findings "are entitled to great weight and will not be reversed on appeal unless the justice overlooked or misconceived material evidence, or was otherwise clearly wrong." *In re Isabella C.*, 852 A.2d 550, 555 (R.I.2004) (citing *In re Robert S.*, 840 A.2d 1146, 1149 (R.I. 2004)). In accordance with this deferential

standard, it is our function to determine whether legally competent evidence exists in the record before us to support the finding, by clear and convincing evidence, that the children were dependent and that respondent neglected his children. *See In re Veronica T.*, 700 A.2d 1366, 1368 (R.I. 1997).

The statutory definitions relating to neglected and dependent children include instances where their "physical or mental health or welfare is harmed or threatened with harm." Section 14–1–3(6), (8). This Court has held that in passing on allegations of dependency or neglect, it is incumbent upon the trial justice to set forth the facts upon which the finding rests. *In re Ephraim L.*, 862 A.2d 196, 200 (R.I.2004). Unless the state proves, by clear and convincing evidence, that the child is "actually suffering or is likely to suffer physical and/or emotional harm, there is no reason to disturb the basic security of a family relationship." *In re Jonathan*, 415 A.2d 1036, 1039 (R.I.1980).

■■ The respondent contends that he did not neglect his children, that the home was adequately furnished, warm and suitable, and that after the initial petition was filed, there was no evidence of domestic abuse.[4] In a detailed decision, including twenty-four findings of fact, the trial justice set forth her ultimate conclusion that the children were neglected as to him. We are of the opinion that there was legally competent evidence to support her findings that the children were at risk of being harmed, based on lack of parental supervision, substance abuse and domestic violence by and between the parents. Further, although the respondent alleges there was no evidence of domestic violence, the trial justice specifically declared

---

4. Haney also argues that dependency never was alleged in the petition; however, as noted above, the petitions were amended to include dependency.

1232

that she did not believe Allen's denials. It is well established that "[t]he task of determining the credibility of witnesses is peculiarly the function of the trial justice when sitting without a jury." *Parella v. Montalbano,* 899 A.2d 1226, 1239 (R.I. 2006) (quoting *Hood v. Hawkins,* 478 A.2d 181, 184 (R.I.1984)). Therefore, we decline to disturb the trial justice's credibility determinations and, with them, her finding of neglect and dependency.

## Conclusion

For the foregoing reasons, we affirm the decree of the Family Court, to which the papers in this case may be remanded.