**Supreme Court**

No. 2015-286-Appeal.
(14-1152-1)

In re Kurt H.                                    :

NOTICE:    This opinion is subject to formal revision before publication in the Rhode Island Reporter.  Readers are requested to notify the Opinion Analyst, Supreme Court of Rhode Island, 250 Benefit Street, Providence, Rhode Island 02903, at Telephone 222-3258 of any typographical or other formal errors in order that corrections may be made before the opinion is published.

In re Kurt H.                              :

Present:  Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ.

**O P I N I O N**

**Chief Justice Suttell, for the Court.**  The respondent, Eric H. (father or respondent), appeals from a decree of neglect as to his son, Kurt H. (the child), entered in the Family Court. The child came under the state's care on October 6, 2014, after an alleged alcohol relapse by the child's mother; at the time the respondent was incarcerated at the Adult Correctional Institutions (ACI).  This case came before the Supreme Court pursuant to an order directing the parties to appear and show cause why the issues raised in this appeal should not be summarily decided. After considering the parties' written and oral submissions and reviewing the record, we conclude that cause has not been shown and that this case may be decided without further briefing or argument.  For the reasons set forth in this opinion, we affirm the decree of the Family Court.

**I**

**Facts[1] and Travel**

At some point after the child's birth in 2012 in Massachusetts, the family became involved with the Massachusetts Department of Social Services (DSS) for reasons that are not

---

[1] The following facts are set forth in the Rhode Island Department of Children, Youth, and Families' statement of facts to substantiate allegations of abuse, neglect, and/or dependency and are not disputed.

germane to the issues currently on appeal. In June 2014, the family moved to an apartment in Pawtucket. Shortly thereafter, DSS contacted the Rhode Island Department of Children, Youth, and Families (DCYF) to report that the family had relocated. In late July 2014, respondent was arrested and held on a charge of conspiracy to violate the controlled substances law; he subsequently pled to the charge and was sentenced to eighteen months at the ACI.

After respondent's arrest and detention, the mother "began working" with the Family Care Community Partnership (FCCP). On October 6, 2014, the mother admitted to a FCCP agent that she had relapsed and had been drinking for several days, and that she would be evicted on October 18, 2014. Consequently, a DCYF Child Protective Investigator (CPI) "responded to the home." In an affidavit, the CPI attested that the mother, when interviewed at her home, began "screaming and swearing[,] saying [that] she was going to drink a bottle of alcohol and kill herself." The CPI described the mother as "belligerent" and "erratic" during this visit. The child was placed in the temporary custody of DCYF, and, on the following day, DCYF filed an ex parte petition alleging that the child was neglected. On January 22, 2015, the petition was amended to include an allegation of dependency, an allegation to which the mother pled.

The petition came before the Family Court for trial as to father on May 12, 2015. Before trial commenced, respondent stated that he did not "feel" he could admit to neglect because, although he was incarcerated when the child was removed, it was the mother's relapse that caused the child to come into the state's care. The respondent indicated that, in light of the fact that the mother had pled to dependency, he should be permitted to do so as well. The trial justice disagreed, and reminded respondent that someone incarcerated at the ACI is "not in a position to take care of [a] child." Accordingly, the trial began and respondent was the only witness to testify.

At trial, respondent testified that he had supported his family financially. Specifically, respondent testified that, at the time he was incarcerated, he left the apartment "paid for, food and pantry * * * fully stocked, diapers * * * [and] had money coming in that [he] allowed [the mother] to spend on herself and the child."[2] The respondent testified that the "money coming in" was from jobs he had completed before being incarcerated and money owed to him, and that he cashed in an IRA worth $6,000 to ensure that the mother and child "had everything they needed."

At the conclusion of the testimony, the trial justice rendered a bench decision, in which she found by clear and convincing evidence that respondent was unable to care for the child due to his confinement in the ACI, and that respondent knew that the mother had alcohol problems when he left the child in her custody. The trial justice also found that respondent neglected the child by failing "to provide the child with a minimum degree of care, supervision or guardianship, and [that] the child [was] without proper parental care and supervision." The Family Court therefore ordered the child "committed to the care, custody and control of [DCYF]" and ordered the appointment of an educational advocate for the child. A decree entered on June 1, 2015, from which respondent timely appealed.[3]

## II

### Standard of Review

In adjudicating "allegations of dependency and neglect, the Family Court is required to make its findings by clear and convincing evidence, in accordance with Rule 17(b) of the Family Court Rules of Juvenile Proceedings." In re Jermaine H., 9 A.3d 1227, 1231 (R.I. 2010). "The

---

[2] The respondent clarified that he paid the security deposit plus first and last months' rent on the apartment.
[3] A subsequent decree was entered on June 8, 2015, summarizing the trial justice's findings of fact.

clear and convincing standard of proof requires the trial justice to have a 'clear conviction without hesitancy of the truth of the precise facts in issue.'" Id. (quoting In re Adner G., 925 A.2d 951, 957 (R.I. 2007)). Accordingly, "[t]his Court's standard of review requires that 'we examine the record to determine whether legally competent evidence exists in it to support findings made by the trial justice.'" Id. (quoting Adner G., 925 A.2d at 957).

Moreover, "the trial justice's findings 'are entitled to great weight and will not be reversed on appeal unless the justice overlooked or misconceived material evidence, or was otherwise clearly wrong.'" Jermaine H., 9 A.3d at 1231 (quoting In re Isabella C., 852 A.2d 550, 555 (R.I. 2004)). Therefore, "[i]n accordance with this deferential standard, it is our function to determine whether legally competent evidence exists in the record before us to support the finding, by clear and convincing evidence, that the children were dependent and that [the] respondent neglected his children." Id.

## III

### A

### Dependency Plea

We first address respondent's contention that the trial justice erred in not allowing him to admit to allegations of dependency. Before the commencement of trial, respondent offered to plead to dependency, noting that the mother, whose relapse had occasioned the child's removal from her home, had been permitted to enter such a plea. Furthermore, DCYF indicated that it was "willing to accept a dependency plea," and that the child's guardian ad litem, although opposing the plea, stated "if the [c]ourt [was] going to accept it, [he was] not going to vehemently object." The trial justice nevertheless declined to accept respondent's offered plea "because the fact that he's incarcerated means he's not in a position to take the child, and that

- 4 -

would not be dependency." On appeal, respondent characterizes the trial justice's refusal to accept his dependency plea as "a waste of time and judicial resources" and "supremely unfair" under the circumstances of this case.

A dependent child is defined under G.L. 1956 § 14-1-3(6) as:

> "any child who requires the protection and assistance of the court when his or her physical or mental health or welfare is harmed, or threatened with harm, due to the inability of the parent or guardian, through no fault of the parent or guardian, to provide the child with a minimum degree of care or proper supervision because of:
>
> "(i) The death or illness of a parent; or
> "(ii) The special medical, educational, or social-service needs of the child which the parent is unable to provide."

Dependency, therefore, is by definition a condition involving harm or potential harm to a child that arises without fault by the parent. If the parent's inability to provide the child with a minimum degree of care or proper supervision is a result of the parent's incarceration, it can hardly be argued that the parent is without fault. In the case under review, the reason for respondent's incarceration was his decision to engage in criminal activity. We recognize that prior to his incarceration, respondent made admirable efforts to provide for his family as best he could. He was well aware, however, of the mother's history of alcoholism and the fact that she had prior involvement with DCYF and that she has two other children who were currently being cared for by her parents. When her relapse occurred, only nine weeks after his initial detention, respondent was not in a position to care for the child. Clearly, the decision to accept or reject a plea is discretionary with a trial justice. Here, we cannot say that the trial justice abused her discretion in this regard.

## B

## Parental Neglect

On appeal, respondent argues that the trial justice clearly erred in finding that the child had been neglected by him. The respondent contends that he did not neglect his child because "[h]e worked hard," kept the "household * * * in good order," and "did all he could do to financially support [the child] * * * for as long as possible." At trial, respondent testified that the home was furnished, there was adequate food, toys, and clothing for the child, and the rent was paid before his incarceration. The trial justice, however, found by clear and convincing evidence that respondent was not able to care for the child due to his eighteen-month sentence at the ACI. Significantly, the trial justice also found that respondent was aware of the mother's alcohol issues.

Based upon our review of the record, we are of the opinion that legally competent evidence exists to support the trial justice's findings of neglect. At the outset, we note that DCYF brought a neglect petition under the provisions of two discrete chapters of the general laws—chapter 1 of title 14 and G.L. 1956 chapter 11 of title 40. Section 14-1-3(8) provides:

> "'Neglect' means a child who requires the protection and assistance of the court when his or her physical or mental health or welfare is harmed, or threatened with harm, when the parents or guardian:
> "(i) Fails to supply the child with adequate food, clothing, shelter, or medical care, though financially able to do so or offered financial or other reasonable means to do so;
> "(ii) Fails to provide the child proper education as required by law; or
> "(iii) Abandons and/or deserts the child."

Section 40-11-2(1)(v), moreover, provides that an:

> "'Abused and/or neglected child' means a child whose physical or mental health or welfare is harmed, or threatened with

harm, when his or her parent or other person responsible for his or her welfare:
"* * *

"Fails to provide the child with a minimum degree of care or proper supervision or guardianship because of his or her unwillingness or inability to do so by situations or conditions such as, but not limited to: social problems, mental incompetency, or the use of a drug, drugs, or alcohol to the extent that the parent or other person responsible for the child's welfare loses his or her ability or is unwilling to properly care for the child[.]"

The fact that an individual in prison lacks the ability to provide personally for a child's physical needs is perhaps a tautology. That is not to say, however, that the individual is necessarily unable to make suitable arrangements for the care and supervision of his or her child. The welfare of an incarcerated individual's child may not even be at issue in situations where the child remains in the care of the other parent or a guardian, as long as the other parent or guardian is capable of providing appropriate care. In this case, respondent's family was seemingly in a relatively stable situation when he was initially detained, and the child's mother was by all accounts sober. Yet respondent had made no provisions for the child's welfare in the event that the mother experienced a relapse. The respondent was well aware of the mother's history of alcohol and substance abuse, as well as the fact that two of her children were in the care of the mother's parents.

Notwithstanding his good intentions, the respondent was unable to protect the child precisely because of his incarceration. "It is quite clear on [the] record that when events did unfold that put the child[ ] at risk"—here, the mother's relapse—the respondent failed to provide the child with a minimum degree of care or proper supervision or guardianship "because he was incarcerated and no other individual was legally authorized to act on his behalf in assuming care of the child[ ]." In re T.T.C., 855 A.2d 1117, 1121 (D.C. 2004). The respondent testified that, when he was first incarcerated, the mother was "clean, sober, and with her family[;] she was

doing fine." Nevertheless, he called her "two, three times a day" and "also had friends and family checking in." When the child was removed from his mother's care on October 6, 2014, and when DCYF filed the neglect petition on October 7, 2014, and the child was placed in the temporary custody of DCYF, the respondent was unable to provide for the child because of his incarceration. When the case was tried and a decision rendered on May 12, 2015, the respondent had made no arrangements for the child's well-being and was unable himself to care for the child because of his incarceration. We are well satisfied that more than sufficient competent evidence exists on the record to support the finding of neglect.

## IV

## Conclusion

For the reasons stated herein, we affirm the decree of the Family Court finding the child neglected as to the father and committing the child to the care, custody, and control of DCYF. The record of this case shall be returned to the Family Court.

**SUPREME COURT – CLERK'S OFFICE**

**OPINION COVER SHEET**

| | |
|---|---|
| **Title of Case** | In re Kurt H. |
| **Case Number** | SU-15-0286-Appeal. (14-1152-1) |
| **Date Opinion Filed** | January 18, 2017 |
| **Justices** | Suttell, C.J., Goldberg, Flaherty, Robinson, and Indeglia, JJ. |
| **Written By** | Chief Justice Paul A. Suttell |
| **Source of Appeal** | Providence County Family Court |
| **Judicial Officer From Lower Court** | Associate Justice Laureen D'Ambra |
| **Attorney(s) on Appeal** | For Petitioner:<br><br>Karen A. Clark<br>Department of Children Youth and Families<br><br>Karl D. Beauregard<br>Court Appointed Special Advocate<br><br>For Respondent:<br><br>Catherine Gibran<br>Office of the Public Defender |