Justice Robinson, dissenting.
 

 I respectfully but unreservedly dissent. In my judgment, the majority has erred: (1) in underestimating the probative force of the meticulous and voluminous fact-finding carried out by the trial justice (including numerous very explicit credibility determinations); and (2) in opining that, "even giving the trial justice's factual findings
 their due deference, we are not persuaded that her findings amount to 'clear and convincing' evidence [of a common law marriage]." It is my definite view that the trial justice's findings of fact and her determinations about credibility
 
 do
 
 very clearly and much more than sufficiently constitute a basis for her ultimate holding that there was clear and convincing evidence of the existence of a common law marriage between Angela Luis and Kevin Gaugler. I usually view legal issues in a rather nuanced manner, often reaching a decision in a "
 
 dubitante
 
 " frame of mind; but, in this instance, I am unable even to concede that the question is close. I am entirely convinced that the trial justice "got it right;" and, while I accept the fact that my esteemed colleagues see things differently, I confess to being almost nonplussed as I regard their conclusion-especially when I recall the great deference that this Court regularly accords to the fact-finding and credibility determinations of trial justices.
 

 Time and time again this Court has emphasized the deference that we owe to the factual findings of trial justices-perhaps most especially in the context of a non-jury trial.
 
 See, e.g.
 
 ,
 
 Cullen v. Tarini
 
 ,
 
 15 A.3d 968
 
 , 976 (R.I. 2011) ("A judgment in a nonjury case will be reversed on appeal [only] when it can be shown that the trial justice misapplied the law, misconceived or overlooked material evidence or made factual findings that were clearly wrong.") (internal quotation marks omitted);
 
 B.S. International Ltd. v. JMAM, LLC
 
 ,
 
 13 A.3d 1057
 
 , 1062 (R.I. 2011) ("We apply a deferential standard of review with respect to the factual findings of a trial justice sitting without a jury in a civil case.");
 
 In re Dissolution of Anderson, Zangari & Bossian
 
 ,
 
 888 A.2d 973
 
 , 975 (R.I. 2006) ("The findings of fact by a trial justice sitting without a jury are entitled to great weight and shall not be disturbed on appeal unless the record shows that the findings are clearly wrong or unless the trial justice overlooked or misconceived material evidence on a controlling issue.") (internal quotation marks omitted);
 
 DeMelo v. Zompa
 
 ,
 
 844 A.2d 174
 
 , 177 (R.I. 2004) ("In divorce actions, the findings of fact by a trial justice sitting without a jury are entitled to great weight and will not be disturbed by this Court on appeal unless the trial justice misconceived or overlooked relevant evidence or was clearly wrong.");
 
 see also
 

 Federal Communications Commission v. Fox Television Stations, Inc.
 
 ,
 
 556 U.S. 502
 
 , 529,
 
 129 S.Ct. 1800
 
 ,
 
 173 L.Ed.2d 738
 
 (2009) ("This Court * * * is one of final review, not of first view.") (internal quotation marks omitted).
 
 [1]
 

 While my respect for my colleagues in the majority is genuine, I am nonetheless of the view that the majority appears to have engaged in its own differential weighing of the evidence as though it were acting as a
 
 nisi prius
 
 court. I acknowledge the possibility that, in this case, in which the "clear and convincing" standard applies, a reasonable trial justice might conceivably,
 
 on the basis of the different weight that he or she might accord
 
 to the testimony and other evidence in the record, reach a different conclusion as to the existence
 
 vel non
 
 of a common law marriage.
 
 [2]
 

 But I do not concede that the trial justice in this case reversibly erred in reaching the conclusion that she reached.
 
 [3]
 

 It is certainly possible that one or more members of this Court, if sitting in a
 
 nisi prius
 
 capacity, might have assessed the evidence differently-might have accorded more or less weight to one or other piece of evidence or might have made different credibility determinations.
 
 [4]
 
 And that differential weighing might have affected the ultimate conclusion of that hypothetical judicial officer as to whether there was "clear and convincing evidence" of the existence of a common law marriage. But such weighing is not properly the role of an appellate court. Rather, we have said: "If on review it becomes clear to us that the record indicates that competent evidence supports the trial justice's findings, we shall not substitute our view of the evidence for his [or hers] even though a contrary conclusion could have been reached."
 
 School Committee of City of Cranston v. Bergin-Andrews
 
 ,
 
 984 A.2d 629
 
 , 648-49 (R.I. 2009) (internal quotation marks omitted);
 
 see also
 

 State v. Gillespie
 
 ,
 
 960 A.2d 969
 
 , 980 (R.I. 2008) ("[W]e may uphold a trial justice's ruling even if we would have ruled differently had we been in the trial justice's position.");
 
 North Providence School Committee v. North Providence Federation of Teachers, Local 920, American Federation of Teachers
 
 ,
 
 945 A.2d 339
 
 , 345 n.10 (R.I. 2008) ;
 
 see generally
 

 National Hockey League v. Metropolitan Hockey Club, Inc.
 
 ,
 
 427 U.S. 639
 
 , 642,
 
 96 S.Ct. 2778
 
 ,
 
 49 L.Ed.2d 747
 
 (1976) ("The question, of course, is not whether this Court, or whether the Court of Appeals, would as an original matter have dismissed the action; it is whether the District Court abused its discretion in so doing.").
 

 The majority notes the conflicting nature of the evidence in this case, and it points to inconsistencies in the testimony. But there is nothing new about there being inconsistencies in witness testimony.
 
 See
 

 State v. Jensen
 
 ,
 
 40 A.3d 771
 
 , 781 (R.I. 2012) ("[T]he presence of some inconsistencies between or among utterances of a witness or witnesses at different points in time does not
 
 ipso facto
 
 render the testimony unworthy of belief.");
 
 see also
 

 State v. Cerda
 
 ,
 
 957 A.2d 382
 
 , 386 (R.I. 2008). The trial justice candidly recognized that the
 evidence was certainly not all of one piece, and her "Findings of Fact" clearly reflect her awareness of that reality. But then, in her role as a fact-finder and judge of credibility, she examined the record as a whole and gave more weight to some of the evidence and less (or none) to other parts of the evidence.
 

 I have long believed that there is profound wisdom in the attitude which Prince Hamlet adopted while appraising the life of his recently deceased father. Reflecting upon the totality of his father's life, Hamlet sums up his reflections by simply saying: "Take him for all in all." William Shakespeare,
 
 Hamlet
 
 act 1, sc. 2. As I read the trial justice's decision in the instant case, she acted in an analogous manner; she indicated that some of the evidence militated in favor of there being a common law marriage while some of the evidence militated in the contrary direction. Then, in the end, she decided that the former outweighed the latter to the point of constituting clear and convincing evidence of the existence of a common law marriage between Ms. Luis and Mr. Gaugler.
 

 I approach the conclusion of this dissent by stating that, in light of her impressively meticulous and voluminous fact-finding and her conscientious effort to make determinations as to witness credibility, which were the product of what she observed from her "front-row seat,"
 
 [5]
 
 the trial justice pointed to evidence that more than satisfied the operative and quite demanding "clear and convincing" standard of proof-which standard required her "to have a clear conviction without hesitancy of the truth of the precise facts in issue."
 
 In re Kurt H.
 
 ,
 
 152 A.3d 408
 
 , 411 (R.I. 2017) (internal quotation marks omitted).
 

 I am unable and unwilling to assign error to the trial justice in this case. She presided over a lengthy trial, during the course of which there was evidence submitted that was supportive of a finding of common law marriage as well as evidence to the contrary. Then, in an impressive, carefully detailed written decision (a decision which spans over 100 pages and contains,
 
 inter alia
 
 , 142 highly specific findings of fact), the trial justice reviewed the evidence with care and concluded that, viewed in its totality, the evidence constituted clear and convincing evidence of the existence of a common law marriage between Ms. Luis and Mr. Gaugler.
 

 It is my unblinking opinion that, giving appropriate deference to the trial justice's findings of fact and her credibility determinations, there very definitely was clear and convincing evidence of the existence of a common law marriage between Ms. Luis and Mr. Gaugler.
 
 [6]
 
 Therefore, I respectfully
 but vigorously dissent from the contrary conclusion reached by the majority.
 

 This principle of deference to the trial justice is acknowledged in the majority opinion, which, in the "Standard of Review" section, quotes with approval the following language from the case of
 
 Fravala v. City of Cranston ex rel. Baron
 
 ,
 
 996 A.2d 696
 
 , 704 (R.I. 2010) : "It is well-established that the findings of fact of a trial justice, sitting without a jury, will be given great weight and will not be disturbed absent a showing that the trial justice overlooked or misconceived material evidence or was otherwise clearly wrong." (Internal quotation marks omitted.)
 

 I want to be very clear. I could countenance a ruling that there was no common law marriage
 
 only if
 
 such a ruling were based upon fact-finding and credibility assessments that differed greatly from those actually made by the trial justice in this case.
 

 The following sentence from the trial justice's lengthy and fact-filled decision nicely summarizes her conclusion:
 

 "After thoughtful review of all the testimony presented, as well as the exhibits offered, this Court, by clear and convincing evidence, finds that the evidence presented is sufficient to prove Plaintiff Angela's claims that she and Kevin held themselves out to the community as husband and wife which led to an existence of a general and uniform belief and reputation in the community that they were married."
 

 The number of highly specific credibility determinations made by the trial justice in her "Findings of Fact" is noteworthy.
 

 Simply by way of example, I would quote the positive credibility determination that is reflected in Finding No. 16:
 

 "Angela's testimony that when Zach entered school in September 1995 that she and Kevin had a mutual present intent to change their relationship and to begin living as husband and wife to form a traditional family for the benefit of Zach is very credible[.]"
 

 And, by way of contrast, I would quote the negative credibility determination that is reflected in Finding No. 35 (regarding testimony from a witness presented by Mr. Gaugler):
 

 "Ms. Gaugler's testimony that Kevin specifically told her that he and Angela were not getting married is believed by this Court to be a complete fabrication[.]"
 

 See, e.g.
 
 ,
 
 In re Daniel D.
 
 ,
 
 9 A.3d 651
 
 , 656 (R.I. 2010) ("We emphasize that the trial justice hears the testimony from the vantage point of his [or her] front-row seat in the courtroom. * * * For this reason, we defer to the trial justice's findings.") (internal quotation marks omitted);
 
 State v. Woods
 
 ,
 
 936 A.2d 195
 
 , 198 (R.I. 2007) ("We will not interfere with the hearing justice's conclusions with respect to the credibility of the complaining child-witness. We do not have the same vantage point as the presiding judge, and we are unable to assess the witness' demeanor, tone of voice, and body language. Our perspective is limited to analyzing words printed on a black and white record.");
 
 State v. Texter
 
 ,
 
 896 A.2d 40
 
 , 43-44 (R.I. 2006) ("The credibility of witnesses and the weight of the evidence is reserved to the fact-finder and is not the function of this Court.");
 
 Perry v. Garey
 
 ,
 
 799 A.2d 1018
 
 , 1022 (R.I. 2002) ("[A]s a front-row spectator the trial justice has the chance to observe the witnesses as they testify and is therefore in a better position to weigh the evidence and to pass upon the credibility of the witnesses than is this [C]ourt.") (internal quotation marks omitted).
 

 The subject of common law marriage has generated a good deal of legal scholarship in recent decades-with some writers lauding the doctrine and others viewing it as outmoded.
 
 See, e.g.
 
 , Sonya C. Garza,
 
 Common Law Marriage: A Proposal for the Revival of a Dying Doctrine
 
 ,
 
 40 New Eng. L. Rev. 541
 
 (2006) ; Mary Ann Glendon,
 
 Marriage and the State: The Withering Away of Marriage
 
 ,
 
 62 Va. L. Rev. 663
 
 (1976); Charlotte K. Goldberg,
 
 The Schemes of Adventuresses: The Abolition and Revival of Common-Law Marriage
 
 ,
 
 13 Wm. & Mary J. Women & L. 483
 
 (2007) ; Ellen Kandoian,
 
 Cohabitation, Common Law Marriage, and the Possibility of a Shared Moral Life
 
 ,
 
 75 Geo. L.J. 1829
 
 (1987) ; Sarah Primrose,
 
 The Decline of Common Law Marriage & The Unrecognized Cultural Effect
 
 ,
 
 34 Whittier L. Rev. 187
 
 (2013). While either the General Assembly or this Court may, in an appropriate case at some future time, wish to examine the subject of common law marriage in a comprehensive manner, this dissent (like the majority opinion) is predicated on existing Rhode Island law.